ANTHONY MASIELLO & another[1] *vs*. PERINI CORPORATION.

Middlesex.  April 1, 1985. — May 20, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Attorney at Law,* Representation of differing interests, Disqualification.

A judge correctly determined that an attorney's simultaneous representation
of a construction company and plaintiffs with a claim against the company
in an unrelated matter did not contravene the principle against simultane-
ous representation of two clients set forth in *McCourt Co.* v. *FPC
Properties, Inc.,* 386 Mass. 145 (1982), where evidence warranted find-
ings that the attorney reasonably could have believed at the outset of
his representation of the plaintiffs that an amicable settlement without
a lawsuit was possible, that his intervention on the plaintiffs' behalf
while in the defendant's employ never progressed beyond a letter inquiry
into the status of the plaintiffs' claim, and that, upon learning of the
possibility of a conflict, he withdrew from representation of the plaintiffs.
[845-847]
A judge in a civil action correctly denied the defendant's motion to disqualify
plaintiffs' counsel on the ground that counsel had violated Disciplinary
Rule 4-101 (B) (2), where evidence warranted a finding that the attorney,
while representing the defendant in a prior action, had received no
confidences the use of which would have been to the disadvantage of
the defendant in the current action. [847-850]

CIVIL ACTION commenced in the Superior Court Department
on January 4, 1982.

A motion respecting disqualification of counsel was heard
by *Elbert Tuttle,* J.

After an interlocutory appeal was authorized in the Appeals
Court by *Christopher J. Armstrong,* J., the Supreme Judicial
Court transferred the case on its own initiative.

*James C. Gahan, Jr.,* for the defendant.
*Robert D. City* for the plaintiffs.

---

[1] Muriel E. Masiello.

ABRAMS, J. The defendant, Perini Corporation (company), appeals from a denial of its motion to disqualify plaintiffs' counsel. The company maintains that the attorney, without the company's consent, served as counsel for the Masiellos in this action at the same time that he was defending the company in other actions, thus violating the principle of *McCourt Co.* v. *FPC Properties, Inc.*, 386 Mass. 145 (1982). The company also argues that plaintiffs' counsel obtained certain confidences relevant to the instant litigation in the course of his prior representation of the company and must therefore be disqualified. We affirm the judge's denial of the defendant's motion to disqualify.

We summarize the facts as found by the judge. In 1979, Robert D. City represented Morrison-Knudsen, White, and Mergantime — a joint venture — in three lawsuits relating to the extension of the Massachusetts Bay Transportation Authority's Red Line through Cambridge and Somerville. In the first lawsuit, the building inspector of the city of Cambridge sought to enjoin the project, claiming that the contractors had not obtained building permits from Cambridge. In the second suit, the fire chief of Cambridge sought similar relief on the ground that the contractors had not obtained the requisite blasting permits. In a third action in Federal District Court, Red Line Alert, a group of concerned citizens, challenged the sufficiency of an environmental impact report prepared for the project by the Urban Mass Transit Administration. The Perini Corporation was also engaged in the disputed construction. Because its interests in the litigation were identical to those of the joint venture, the company requested Mr. City to represent it as well in the three actions. He agreed. The first two actions were completed in 1979. The action in Federal Court, although not dismissed until 1982, was "substantively completed by 1980."

Anthony Masiello first consulted Mr. City in 1981 regarding damage to Masiello's property, allegedly resulting from the company's failure to take sufficient precautions to prevent such damage during construction of the subway extension. On September 28, 1981, Mr. City wrote the company's insurer stating that his office represented Masiello. Mr. City went on to ask that the insurer telephone him "to discuss the status of this

matter," stating that it was his "intention to effectuate a fair settlement of the claim as promptly as possible." The judge found that "[a]t the time that [Mr.] City wrote the letter to [the company's] insurer, he believed that the problem could be settled amicably without a lawsuit." When Mr. City learned, very shortly thereafter, that the insurer would not settle, he withdrew from representation of the plaintiffs. The plaintiffs procured other counsel, who filed a complaint on their behalf against the company on January 4, 1982. Some six months later, however, the plaintiffs asked Mr. City to represent them anew. Mr. City, who had not represented the defendant since 1982, filed an appearance representing the Masiellos on June 20, 1984.

The matter was originally scheduled for trial on September 17, 1984, and at the request of the defendant, was rescheduled to October 3. On October 1, 1984, counsel for the defendant wrote to Mr. City requesting that he withdraw as plaintiffs' counsel because of a "significant conflict of interest." In response, Mr. City filed a motion on October 3, 1984, for a protective order "to permit plaintiff to continue to be represented by his present counsel." The company filed its opposition to the plaintiffs' motion for a protective order; the opposition was "essentially a motion to have the plaintiffs' counsel removed." A hearing was held on October 3, 1984, at which testimony was taken from the company's project engineer and from Mr. City.

The judge applied the "substantial relationship" test, see note 5, *infra*, in analyzing the propriety of Mr. City's representation of the plaintiffs in view of his previous work for the defendant. The judge determined that "the subject matter of that original relationship [was] not substantially related to the matter at hand in this case and is not materially adverse to [Mr.] City's former client, the Perini Corporation." He therefore denied the defendant's motion for the removal of plaintiffs' counsel. On October 16, 1984, the defendant filed a petition for interlocutory relief under G. L. c. 231, § 118. A single justice of the Appeals Court denied the petition. On October 30, 1984, the defendant filed an application for leave to take an interlocutory appeal to a panel of the Appeals Court. The

application was allowed. We transferred the case to this court on our own motion.[2]

The company argues that the judge erred in refusing to disqualify plaintiffs' counsel on the grounds that: (1) counsel, without the defendant's consent, had simultaneously represented the Masiellos and the company, in violation of Disciplinary Rules 5-105 (B) and 5-105 (C), appearing in S.J.C. Rule 3:07, 382 Mass. 781 (1981);[3] and (2) the Code of Professional Responsibility bars representation adverse to a former client where, as here, there is a substantial relationship between the subject matter of the present representation and that of a former representation. We perceive no error.

1. *Simultaneous representation.* The company contends that our decision in *McCourt Co.* v. *FPC Properties, Inc.*, 386 Mass. 145 (1982), expressly forbids an attorney from acting for a client in the defense of one action and against that same client as counsel in a second action unless each client consents. Mr. City, the company maintains, "had an attorney-client relationship with Perini Corporation until November 30, 1981," but he "established an attorney-client relationship with Masiello regarding his claim against Perini Corporation on September 28, 1981." The company would have us disqualify Mr. City because of this period of simultaneous representation. We decline to do so.

We held in *McCourt* that "[t]he undivided loyalty that a lawyer owes to his clients forbids him, without the clients'

_____

[2] A single justice of the Appeals Court permitted the parties to pursue an interlocutory appeal. *McCourt Co.* v. *FPC Properties, Inc.*, 386 Mass. 145, 148 n.2 (1982). Because the issues raised require interpretation of our decision in *McCourt,* we transferred the case sua sponte.

[3] Disciplinary Rule 5-105 (B) provides: "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C)."

Disciplinary Rule 5-105 (C) states that "a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

consent, from acting for client A in one action and at the same time against client A in another." 386 Mass. at 146. Our holding was based on the explicit provisions of DR 5-105 (B) and DR 5-105 (C). But we do not see Mr. City's interactions with the Masiellos and the defendant in 1981 as falling within the prohibition of *McCourt*.

The record reflects that Mr. City was approached by Masiello a few days before September 28, 1981, stating that "he had a very bad situation . . . and one that should be settled." The judge found that Mr. City had represented Masiello prior to 1979. According to the record, Mr. City then wrote a letter to the company's insurer on Masiello's behalf "to attempt to effect a settlement of the claim," believing at the time that "the problem was . . . simply that documents were lost somewhere in the papermill." However, when it became "clear that the case, that the matter could not be settled, that it wasn't a simple claim that was being made, [Mr. City] told [Masiello] to go seek other counsel."

"[W]hen a lawyer is consulted by a client, he ordinarily must assume that if the client's interest diverges from the interest of another, a conflict of interest exists between them. Nevertheless, the lawyer must also consider the possibility that there is no conflict. It is in his interest to do so, because on that assumption he can serve both clients. It is in the clients' interest that he do so, for having a 'lawyer for the situation' is usually cheaper, quicker, and less acrimonious than defining the problem in such a way that each party has to have separate counsel." G.C. Hazard, Ethics in the Practice of Law 80 (1978). "In amiable circumstances in which each party has the same objective, retaining one attorney can reduce artificial hostilities that arise from a contrived adversarial situation. . . . Nonetheless, when potential conflicts do develop into actual ones, the attorney must advise the parties to seek separate counsel in order to assure them of adequate representation." Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1310 (1981).

The evidence supports the judge's finding that Mr. City reasonably could have believed, at the time he wrote the insurer, "that the problem could be settled amicably without a lawsuit." There was no suggestion of imminent litigation.[4] The evidence also supports the judge's finding that, as soon as Mr. City learned of the possibility of a conflict, he "informed Masiello that because of his [Mr. City's] representation of Perini he could not represent Masiello in the matter and he told Masiello that he would have to find another attorney." Further, the evidence supports the judge's determination that, while Mr. City remained in the company's employ, his intervention on the plaintiffs' behalf never progressed beyond the letter inquiry into the status of the claim. There is no evidence that Mr. City simultaneously acted *for* the company in one action and *against* the company in another. Hence, we conclude that the judge correctly decided that Mr. City's conduct did not contravene the principle set forth in *McCourt*.

2. *Successive representation.* Disciplinary Rule 4-101 (B) (2), appearing in S.J.C. Rule 3:07, 382 Mass. 778 (1981), provides that a lawyer shall not knowingly "[u]se a confidence or secret of his client to the disadvantage of the client." "The conflict of interest in representing a current client with interests adverse to those of a former client arises from the attorney's duty under Canon 4 to preserve his client's confidences and secrets. Even after termination of the attorney-client relationship, a lawyer remains bound by the Code [of Professional Responsibility] to preserve these confidences." (Citations omit-

---

[4] In *McCourt*, the law firm of the plaintiff's attorneys was actively engaged in representing the defendants in personal injury actions. See 386 Mass. at 147. "A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. . . . On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation. If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that he can retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients." Model Code of Professional Responsibility EC 5-15 (1980).

ted.) Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1315 (1981). Thus, "[d]isqualification from continued representation is a prophylactic measure that courts have invoked in appropriate circumstances to prevent improper disclosure of clients' confidences, or to ameliorate the effects of such disclosures where they have occurred. . . . [A] Court must attempt to prevent confidential information that might have been gained in the first representation from being used to the detriment of the former client in the subsequent action." *Realco Servs., Inc.* v. *Holt,* 479 F. Supp. 867, 871 (E.D. Pa 1979). Clearly, where the judge determines that there exist no confidences from the first representation which would be relevant to the second, disqualification is unnecessary and the parties' choice of counsel should prevail. "[D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman* v. *Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir. 1982).

Here, the judge conducted a thorough factual inquiry into the question whether Mr. City had received confidences, while representing the company, the use of which would be to the disadvantage of the company in the current litigation. The judge determined that Mr. City had received no such confidences. The company argues nonetheless that it presented evidence which "overwhelmingly meets the criteria of the 'substantial relationship test,' and thus, Attorney City should be disqualified as Plaintiffs' counsel."[5] Although the defendant

---

[5] The "substantial relationship" test, first enunciated in *T.C. Theatre Group* v. *Warner Bros. Pictures,* 113 F. Supp. 265 (S.D. N.Y. 1953), had been summarized as follows: "Despite the existence of a prior attorney-client relationship, an attorney will not be disqualified from taking a case unless the current representation is both adverse to the interests of the former client and substantially related to the former representation." Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1323 (1981). "The *T.C. Theatre* rule is prophylactic in that it proscribes the subsequent representation on the sole ground that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confiden-

frames this argument as one of an error of law, the company is challenging, in essence, the validity of the judge's finding that "[Mr.] City did not receive any substantive information relative to the Masiellos' claim against the Perini Corporation . . . during the period of time or as a result of City's representations of the Perini Corporation." We do not disturb findings unless clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). See *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 674 (1977). We have examined the record and conclude that the evidence warrants the finding made by the judge.

There was evidence that Mr. City's representation of the company involved no matters relevant to the project construction other than obtaining permits; that Mr. City did not represent the defendant in any tort claims arising out of the project; that Mr. City was never provided any information about the Masiello claim; and that Mr. City never became privy, by virtue of his employment by the defendant, to any trade secrets or inside information which would bear on the plaintiffs' claim. In these circumstances, we discern no risk that confidential information gained in a prior representation will be used to the disadvantage of the former client in violation of DR 4-101

---

tiality to the former client. The client need never prove that the attorney *actually* misused the confidences to the client's disadvantage" (emphasis in original). *Id.* at 1318.

The "substantial relationship" test has been widely employed in both Federal and State courts. See, e.g., *Westinghouse Elec. Corp.* v. *Gulf Oil Corp.*, 588 F.2d 221 (7th Cir. 1978); *Silver Chrylser Plymouth, Inc.* v. *Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975); *Reardon* v. *Marlayne, Inc.*, 83 N.J. 460 (1980); *ABKCO Indus.* v. *Lennon*, 52 A.D.2d 435, 442 (N.Y. 1976). The Massachusetts Bar Association Committee on Professional Ethics has adopted the "substantial relationship" test in its analysis of problems of successive representation. See Mass. Bar Ass'n Comm. on Professional Ethics, Opinions, Nos. 76-14 (1976), 83-8 (1983). The test, furthermore, has been incorporated into the new model rules. ABA Model Rules of Professional Conduct Rule 1.9 (Proposed Final Draft 1981).

Because there was a specific determination in this case that Mr. City received no confidences germane to the instant litigation during his earlier representation of the Perini Corporation, we need not reach the question whether we should adopt the "substantial relationship" test in deciding problems of successive representation.

(B) (2). The judge's denial of the defendant's motion to disqualify was thus correct.

We add that in the absence of authorization by a single justice of this court or the Appeals Court to seek interlocutory review of an order denying disqualification of counsel, see *CUNA Mut. Ins. Soc'y* v. *Attorney Gen.,* 380 Mass. 539, 540 (1980), that order is not subject to appellate review until after final judgment on the merits of the underlying case. Although the single justice has the authority to allow appellate review of an interlocutory order denying a disqualification motion, that authority should be exercised sparingly and only in the most exceptional circumstances. "The propriety of [a court's] denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment. The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368, 377 (1981). Cf. *Beit* v. *Probate & Family Court Dep't,* 385 Mass. 854, 857-858 (1982).

Finally, in the instant case, the company had ample notice of Mr. City's representation of the plaintiffs yet chose to wait until the eve of trial to express any objection. Such eleventh hour maneuvers are disruptive to the efficient administration of justice and are costly. "Court resources are sorely taxed by the increasing use of disqualification motions as harassment and dilatory tactics." *Gorovitz* v. *Planning Bd. of Nantucket, ante* 246, 250 n.7 (1985). Judges have the authority and discretion to discourage such tactics through the imposition of costs. See, e.g., *Beit* v. *Probate & Family Court Dep't, supra.*

The denial of the defendant's motion for the removal of the plaintiffs' counsel is affirmed.

*So ordered.*