ARTHUR O. WELLMAN, JR. *vs.* DANA J. WILLIS.

Suffolk. May 7, 1987. — July 13, 1987.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Attorney at Law,* Canons of ethics, Representation of different interests, Disqualification, Conflict of interest. *Conflict of Interest.*

In a civil action in which a judge, in ruling on a motion for a protective order, on his own initiative, disqualified plaintiff's counsel on the ground of conflict of interest in the preserving of a former client's confidences as governed by Canon 4, S.J.C. Rule 3:07, DR 4-101, this court held, upon a supplemented record, that the disqualification was unnecessary where affidavits of the plaintiff and his counsel's former client indicated that both consented, after full disclosure, to continued representation by the same law firm in spite of potentially adverse interests. [497-500]

The record in a civil action did not support the defendant's contention that a previous controversy had involved a "joint defense" of himself and another, who had then been represented by plaintiff's present counsel, so as to require disqualification of plaintiff's counsel in the civil action on the ground of conflict of interest. [500]

In a civil action in which clients with potential adverse interests consented, after full disclosure, to simultaneous representation by the same law firm, there appeared no basis in the record for a conclusion that the law firm's continued representation "taints the legal system or the trial of the cause," where the law firm itself had determined that its actions would not violate Canon 5, S.J.C. Rule 3:07, DR 5-105. [500-502]

In a civil case, there was no appearance of impropriety in violation of Canon 9, S.J.C. Rule 3:07, DR 9-101, in a law firm's simultaneous representation of certain clients, after full disclosure and with their consent, such as to warrant disqualification of plaintiff's counsel on the ground of conflict of interest. [502-503]

CIVIL ACTION commenced in the Superior Court Department on February 2, 1987.

A motion for a protective order was heard by *Mel L. Greenberg,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*J. Owen Todd* (*Kenneth R. Berman* with him) for the plaintiff.

*Alan M. Spiro* (*Penny Kozol* with him) for the defendant.

ABRAMS, J. At issue is the correctness of an order disqualifying the plaintiff's attorneys, the law firm of Hale and Dorr, from representing the plaintiff in a civil matter arising out of the sale of rare coins to the plaintiff by the defendant. The plaintiff seeks actual and punitive damages from the defendant claiming fraud, breach of warranty, unfair and deceptive pricing of coins, false grading of coins, and the sale of altered and adulterated coins. The plaintiff, through counsel, sought to depose the defendant Willis. Willis then moved for a protective order, see Mass. R. Civ. P. 26 (c), 365 Mass. 772 (1974), to preclude Hale and Dorr from representing the plaintiff at the deposition because of "the very real conflict between Hale and Dorr's representation of a high-level corporate officer and its representation of a plaintiff against another high-level corporate officer and Standard." [1] The trial judge invited the parties to submit affidavits regarding the allegations of conflict of interest set forth in the motion. Each party filed affidavits. Thereafter, the judge determined that Hale and Dorr had a conflict of interest. He ordered that Hale and Dorr withdraw from its representation of the plaintiff. Pursuant to G. L. c. 231, § 118, first par. (1984 ed.), a single justice of the Appeals Court stayed the disqualification order pending appeal. [2] On our own motion, we transferred the case. We vacate the order of disqualification.

---

[1] Standard Financial Management Corporation, doing business as New England Rare Coin Galleries, has filed a suggestion of bankruptcy; the suit has proceeded against the defendant and Paul F. Taglione, who is not a party to this appeal.

One of the parties has requested that we do not use the actual name of the corporate officer. We call him John Doe.

[2] Pursuant to G. L. c. 211, § 3 (1984 ed.), Willis requested an order from a single justice of this court overturning the stay ordered by the single justice of the Appeals Court. The request was denied.

We recite the prior related proceedings and summarize the affidavits filed with this court. Prior to the commencement of this action, the Federal Trade Commission (FTC) began an investigation involving Standard Financial Management Corporation (Standard) and its principal officers (who were its owners), the defendant and Taglione. The investigation concerned allegations of overgrading, overpricing, and misrepresentation of the grade and investment quality of rare coins sold to the public. During 1986, a financial officer of Standard, John Doe (see note 1, *supra*), consulted Hale and Dorr concerning the FTC investigation. According to the affidavit of the Hale and Dorr attorney, Doe was informed that he was neither a target nor a subject of the FTC investigation. The Hale and Dorr attorney also communicated with an attorney who represented Willis in the FTC proceeding to ascertain the status of the investigation.[3] The affidavits of both attorneys agree that they spoke on two occasions. The affidavit of Willis's attorney indicates that he discussed his professional opinion as to the "roles, and the potential exposures" of both Willis and Doe. The affidavit of the Hale and Dorr attorney, however, indicates that the two attorneys did not discuss "any common or mutual approach, method, or strategy to deal with the Federal Trade Commission."[4]

The judge ruled that because Hale and Dorr had a conflict of interest, the firm could not represent the plaintiff. The judge noted that it was clear that all the attorneys involved had acted in good faith to protect the interests of their clients. Nonetheless, the judge determined that because the interests of the plaintiff and the former Hale and Dorr client, Doe,[5] were adverse, Doe's interest in maintaining the confidentiality of the

[3] The record reflects that a consent decree has been entered into in the FTC investigation. Although the record does not reflect the parties involved in the consent decree, it is clear that the defendant signed the decree.

[4] On the view we take of the record, these discrepancies are not material to our determination that the order should be reversed.

[5] The record reflects that Doe continues to be a client of Hale and Dorr, although any representation concerning the allegations involved here are, on the record before us, concluded.

disclosures he made to his attorney was threatened by Hale
and Dorr's continued representation of the plaintiff here. See
S.J.C. Rule 3:07, DR 4-101, as appearing in 382 Mass. 778
(1981). The judge also looked to the common law rule of
disqualification enunciated in *T.C. Theatre Corp.* v. *Warner
Bros. Pictures,* 113 F. Supp. 265 (S.D.N.Y. 1953), to deter-
mine that disqualification of Hale and Dorr was the appropriate
remedy. The judge considered affidavits submitted by Doe,
his attorney, the plaintiff's attorney, and Willis's attorney in
the FTC matter, and found that they established the "inescap-
able conclusion" that Hale and Dorr received certain confiden-
tial information during its representation in the FTC matter
which may now be used to advance the plaintiff's claim against
Willis and which may actually work to the detriment of Hale
and Dorr's former client.[6] Finally, the judge looked to Canon
9 of the ABA Model Code of Professional Responsibility
(code), which states that a lawyer should avoid even the appear-
ance of impropriety and concluded that Hale and Dorr should
cease its representation of the plaintiff. See S.J.C. Rule 3:07,
DR 9-101, as appearing in 382 Mass. 795 (1981).

1. *Canon 4.* We recognize that the case is in a far different
posture from that in which it was before the trial judge. The
record before us differs significantly from the record before
the trial judge. See note 6, *supra.* On appeal, the major issue
is consent.[7] In determining whether disqualification was ap-

---

[6] These affidavits did not develop the issue of consent. The single justice
of the Appeals Court granted the parties leave to supplement the record and
the affidavits before us of all the affected clients reflect the clients' consent
to Hale and Dorr's representation after full disclosure of the relevant con-
siderations. The trial judge did not have the benefit of these affidavits.

[7] The plaintiff asserts that the defendant lacks standing to request Hale
and Dorr's disqualification. Willis is not and has never been a client of
Hale and Dorr. We need not resolve this issue, however, because the
defendant did not request disqualification of Hale and Dorr in his motion
for a protective order. The judge decided, sua sponte, that disqualification
was necessary. On appeal, the defendant is urging affirmance of the order
of the trial judge. The defendant has standing to argue that the order is
correct.

Some courts permit third parties, generally opposing counsel, to seek
disqualification on the basis of conflict of interest. See, e.g., *Kevlik* v.

propriate, the judge focused on Canon 4 and the attorney's duty to preserve client confidences. The judge looked to the judicially created protection of the "substantial relationship" test.[8] Although many courts have employed this test to analyze the propriety of successive representation,[9] we have not explicitly adopted this test.[10] *Masiello* v. *Perini Corp.*, 394 Mass. 842, 848 n.5 (1985). Nor is it necessary to do so in this case.

The applicability of this test is questionable in circumstances in which the former client, after full disclosure, consents to subsequent representation by the law firm of a potentially

---

*Goldstein,* 724 F.2d 844, 847-848 (1st Cir. 1984); *Brown & Williamson Tobacco Corp.* v. *Daniel Int'l Corp.,* 563 F.2d 671, 673 (5th Cir. 1977). Other courts permit only former clients to move for disqualification. See, e.g., *Fred Weber, Inc.* v. *Shell Oil Co.,* 566 F.2d 602, 608 (8th Cir. 1977), cert. denied, 436 U.S. 905 (1978), overruled on other grounds, *In re Multi-Piece Rim Prods. Liab. Litigation,* 612 F.2d 377 (8th Cir. 1980), vacated sub nom. *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368 (1981); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 88-89 (5th Cir. 1976). Because these motions are frequently used to obtain a tactical advantage, see *Borman* v. *Borman,* 378 Mass. 775, 787 (1979), limitations on standing rules have been advocated. See Greene, Everybody's Doing It — But Who Should Be? Standing to Make a Disqualification Motion Based on an Attorney's Representation of a Client with Interests Adverse to Those of a Former Client, 6 U. Puget Sound L. Rev. 205 (1983).

[8] That test provides that "the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent." *T.C. Theatre Corp.* v. *Warner Bros. Pictures,* 113 F. Supp. 265, 268 (S.D.N.Y. 1953).

[9] See, e.g., *Freeman* v. *Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir. 1982); *Duncan* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1028 (5th Cir.), cert. denied, 454 U.S. 895 (1981); *Wilson P. Abraham Constr. Corp.* v. *Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir. 1977); *National Texture Corp.* v. *Hymes,* 282 N.W.2d 890, 894 (Minn. 1979); *Reardon* v. *Marlayne, Inc.,* 83 N.J. 460, 472-473 (1980).

[10] See Opinion No. 77-2 and Opinion No. 76-12, issued by the Committee on Professional Ethics of the Massachusetts Bar Association, endorsing the substantial relationship test.

adverse interest. See *United States* v. *Agosto,* 675 F.2d 965, 973-974 (8th Cir. 1982); *Melamed* v. *ITT Continental Baking Co.,* 592 F.2d 290, 293 (6th Cir. 1979); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir. 1976); *Interstate Properties* v. *Pyramid Co.,* 547 F. Supp. 178, 183 (S.D.N.Y. 1982). "Since the substantial relationship standard was developed primarily to protect the client who would not otherwise be able to *prove* a breach of his confidence, there would be little reason for the courts to interfere with an informed client decision to waive that judicially created protection. Thus, a greater deference to the desires of the parties in the successive representation cases seems fully appropriate." (Emphasis in original.) Note, Developments in the Law — Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1241, 1334 (1981).[11]

Both the plaintiff and the former client consent to Hale and Dorr's continued representation; therefore, we need not decide whether to adopt the substantial relationship test. Pursuant to the order of the single justice of the Appeals Court, the plaintiff supplemented the record to include a second affidavit of the former client revealing that he has no objection to Hale and Dorr's continued representation of the plaintiff. Moreover, the former client stated that he has consulted an attorney in a different law firm to determine whether he should withdraw his consent to Hale and Dorr's representation of the plaintiff.[12] On the basis of this advice and his review of all the documents

---

[11] The substantial relationship test has been incorporated into the American Bar Association's Model Rules of Professional Conduct (1987). Rule 1.9 states: "A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation . . . ." The comment to this rule elaborates on the effect of client consent. The comment notes that disqualification is granted to protect former clients and thus this protection can be waived by them. The waiver of this protection is only effective if it is preceded by disclosure by the attorney.

[12] One note has suggested that "[o]ne reasonable procedure is for courts to require any individual client to obtain the advice of a separate attorney before consenting." Note, Developments in the Law - Conflicts of Interest in the Legal Profession, *supra* at 1313.

filed with this court, the former client stated that there was no reason for him to withdraw his consent. In addition, the plaintiff submitted an affidavit stating that he has been informed of Hale and Dorr's potential conflict of interest. After consideration of this factor, the plaintiff stated that he consents to Hale and Dorr's continued representation of both himself and the former client. Given that both clients consent to Hale and Dorr's representation after full disclosure of the relevant circumstances, we conclude that disqualification is unnecessary.[13]

Willis contends the substantial relationship test should apply, despite the consent, because he and the former client were in a joint defense posture in the FTC proceeding.[14] The record before us, however, does not support Willis's claim that there was a joint defense in the FTC action. The affidavits of Doe and his attorney make clear that, in contrast to Willis, Doe was informed as early as 1984 that he was not a target of the FTC investigation. The FTC investigation focused on the two owners of Standard, the defendant and Taglione, and Standard. The FTC investigation was not focused on the company's employees. Thus, the record does not support Willis's claim of the existence of a joint defense agreement or posture.

2. *Canon 5.*[15] In addition to the concerns regarding the potential for a breach of the duty to preserve client confidences,

---

[13] Accord *Trust Corp.* v. *Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983); *Lee* v. *Hutson*, 600 F. Supp. 957, 959 (N.D. Ga. 1984); *Klemm* v. *Superior Court*, 75 Cal. App. 3d 893, 901 (1977); *Atlantic Richfield Co.* v. *Sybert*, 295 Md. 347, 354-355 (1983); *In re Complaint as to the Conduct of Boivin*, 271 Or. 419, 427 (1975).

[14] In *Wilson P. Abraham Constr. Corp.* v. *Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977), the court stated the substantial relationship test as it applies in the joint defense context: "Just as an attorney would not be allowed to proceed against his former client in a cause of action substantially related to the matters in which he previously represented that client, an attorney should also not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense."

[15] Canon 5, as appearing in 382 Mass. 779 (1981), provides: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client."

this case also involves Canon 5 considerations. See S.J.C. Rule 3:07, DR 5-105, as appearing in 382 Mass. 781 (1981). Simultaneous representation of clients with adverse interests is broadly proscribed in DR 5-105 (A) and (B). The only exception to this prohibition on simultaneous representation is contained in DR 5-105 (C), which permits a lawyer to represent multiple clients "if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure." In *McCourt Co.* v. *FPC Properties, Inc.*, 386 Mass. 145, 146 (1982), we noted that these provisions expressly forbid one attorney from defending a client in one action and then subsequently representing a new client against the former client, unless each client, after full disclosure, consents. See *Masiello* v. *Perini Corp.*, 394 Mass. 842, 845-846 (1985).

As previously noted, on the basis of the record before us, it is clear that both clients have consented to Hale and Dorr's representation after full disclosure of the consequences of the simultaneous representation. We have not, however, utilized the second aspect of DR 5-105 (C) concerning the requirement that it must be "obvious" that an attorney can represent both interests.[16] Moreover, the code does not define "obvious." This language has been described as somewhat troubling because a literal reading of the language of DR 5-105 (C) makes "representation of conflicting interests nearly impossible. . . . Once it is shown that the exercise of the lawyer's independent professional judgment would be or would likely be adversely affected (DR 5-105 [A]), how could it ever be 'obvious' that he could adequately represent the interest of each party?" *In re Complaint as to the Conduct of Porter*, 283 Or. 517, 529 n.5 (1978). To read the "obvious" aspect of DR 5-105(C) in that fashion would result in the virtual elimination of the consent element of the provision. In *Unified Sewerage Agency* v. *Jelco Inc.*, 646 F.2d 1339, 1348 n.12 (9th Cir. 1981), the court

---

[16] See Opinion No. 78-12, Opinion No. 80-2, Opinion No. 80-10, Opinion No. 85-1, Opinions of the Committee on Professional Ethics of the Massachusetts Bar Association.

stated that "obvious" must be assessed in reference to an objective standard under which the ability of the attorney to represent adequately the interests of each client is "free from substantial doubt."

In *Gorovitz* v. *Planning Bd. of Nantucket,* 394 Mass. 246, 250 (1985), and *Borman* v. *Borman,* 378 Mass. 775, 788 (1979), we encouraged deference to the exercise of an attorney's best judgment as to whether such employment will bring the attorney into conflict with the code.[17] Hale and Dorr has determined that its representation will not violate the provisions of the code. We see no basis in the record before us to conclude that Hale and Dorr's representation "taints the legal system or the trial of the cause before [the court]." *Borman, supra.* Finally, the clients affected by this potential conflict of interest have been apprised of the ramifications of Hale and Dorr's continued representation and both clients have consented.[18] In these circumstances, we are unwilling to read the "obviousness" requirement of DR 5-105 (C) to justify "overriding the client's right to take a calculated risk, and, with full knowledge, engage the attorney of his choice." *Unified Sewerage Agency of Wash. County, Or., supra* at 1349-1350.

3. *Canon 9.* Finally, the judge relied on the dictates of S.J.C. Rule 3:07, Canon 9, as appearing in 382 Mass. 795

---

[17] Accord *City Consumer Servs., Inc.* v. *Horne,* 571 F. Supp. 965, 971 (C.D. Utah 1983). The court stated that the "obvious" standard must be assessed in relation to whether the lawyer possesses substantial doubt that each client can be adequately represented.

[18] We do not consider consent to be the only consideration in a disqualification motion. It is "necessary to balance the competing interests of the client's right [to counsel of choice] and the legal profession's interest in protecting confidential information against the interest in maintaining the highest ethical standards." Taskier & Casper, Vicarious Disqualification of Co-Counsel Because of "Taint," 1 Geo. J. Legal Ethics 155, 157 (1987). Given that Doe is not involved in the plaintiff's suit against the defendants and that the affected clients have no objection to Hale and Dorr's representation after seeking independent advice, we think that the representation of the plaintiff by Hale and Dorr in this case is consistent with the duty of maintaining the highest ethical standards. See *International Business Machs. Corp.* v. *Levin,* 579 F.2d 271, 283 (3d Cir. 1978); *Government of India* v. *Cook Indus.,* 569 F.2d 737, 739 (2d Cir. 1978).

(1981), that a lawyer should avoid even the appearance of impropriety to determine that disqualification was appropriate. We do not believe, however, given the circumstances of this case, that there is an appearance of impropriety in Hale and Dorr's continued representation of the plaintiff. Canon 9 should not be read to alter the "delicate balance" created by the other canons between a client's right to counsel of his choice and the maintenance of professional standards. *Whiting Corp.* v. *White Mach. Corp.*, 567 F.2d 713, 715 (7th Cir. 1977). *Interstate Properties* v. *Pyramid Co. of Utica*, 547 F. Supp. 178, 183 (S.D.N.Y. 1982). If Canon 9 is the only disqualification consideration, generally it is "simply too weak and too slender a reed on which to rest a disqualification order." *Freeman* v. *Chicago Musical Instrument Co.*, 689 F.2d 715, 723 (7th Cir. 1982). See *Armstrong* v. *McAlpin*, 625 F.2d 433, 445 (2d Cir. 1980), vacated on other grounds, 449 U.S. 1106 (1981); *Board of Educ. of the City of N.Y.* v. *Nyquist*, 590 F.2d 1241, 1247 (2d Cir. 1979); *Interstate Properties* v. *Pyramid Co.*, *supra*.

We vacate the order of disqualification and remand the matter to the Superior Court for further proceedings.

*So ordered.*