Connolly, J.
INTRODUCTION
Mercedes-Benz of North America, Inc., Daimler-Benz, A.G. (collectively “Mercedes-Benz”) and its counsel, Ropes & Gray, non-parties to the above-captioned matter, move to disqualify plaintiffs’ counsel. The plaintiffs, Dwight G. Perkins and Jacqueline Perkins (“plaintiffs”), oppose the motion, seeking a declaration that their counsel, Herbert L. Holtz (“Holtz”) and the law firm of Todd & Weld, are qualified to continue representing them. For the reasons set forth below, the motion to disqualify the plaintiffs, counsel is DENIED.
BACKGROUND
In 1989, the plaintiffs brought a personal injury action against Mercedes-Benz, alleging that Mr. Perkins had been injured by his Mercedes-Benz automobile. In that action, Mercedes-Benz was represented by Ropes & Gray, who argued that Mr. Perkins was not injured by his automobile but rather fabricated symptoms in order to reap a financial windfall. In support of this argument, Mercedes-Benz collected evidence showing that Mr. Perkins had engaged in conduct that was inconsistent with his claim of permanent and total disability. This information was attained by Ropes & Gray’s internal investigator, Edward L. Sullivan (“Sullivan”).
In March 1993, the jury returned a Special Verdict finding that Mr. Perkins was not injured as a result of any defect in the Mercedes-Benz automobile.
Holtz worked as an associate at Ropes & Gray from the fall of 1989 through August of 1993. Although Holtz was employed at Ropes & Gray during the Mercedes-Benz litigation, he did not participate in the case. He was assigned to the Labor and Employment Department, a separate practice area from the Litigation Department. While working at Ropes & Gray, Holtz communicated with Sullivan, the in-house investigator. Mercedes-Benz and Ropes & Gray claim that Holtz frequently asked Sullivan questions on investigative techniques, tactics and procedures used to disprove Mr. Perkins’ claim that he was totally disabled. It is further alleged that Sullivan advised Holtz on a number of occasions about specific sources, tactics and techniques that Sullivan had used in order to test the veracity of many of the plaintiffs’ claims, and the specific results of certain aspects of his investigation. However, Holtz argues that he only communicated with Sullivan on cases which he was working while at Ropes & Gray. Holtz states that he does not recall ever discussing the Perkins matter with Sullivan since he had no involvement in that case.
In August of 1993, Holtz joined the firm of Todd & Weld. On December 23, 1994, Holtz and Todd & Weld brought suit against Northwestern National Life Insurance Company on behalf of the plaintiffs. The plaintiffs allege that the defendants entered an agreement with Mr. Perkins to: continue his benefit payments; not to disclose information about his claim to outside third parties; and not to use outside investigators to investigate his claim. The plaintiffs claim that the defendants breached this agreement by discontinuing Mr. Perkins’ benefits, by releasing information to Ropes & Gray, and by hiring several outside private investigators to pursue and harass Mr. Perkins.
The plaintiffs served a subpoena for a deposition and production of documents on Ropes & Gray seeking all documents and communications between Ropes & Gray and Northwestern National Life Insurance Company and/or Paul Revere Life Insurance Company regarding any communication, interaction or correspondence between Ropes & Gray and the insurance companies about Mr. Perkins or the lawsuit Perkins v. Mercedes-Benz, Middlesex Superior Court, Civil Action No. 89-4348. Mercedes-Benz and Ropes & Gray argue that the plaintiffs have defined the scope of the relevant evidence in this case to include the conduct of Mercedes-Benz and its counsel, which encompasses confidential information that was communicated to Holtz while he was employed at Ropes & Gray. Holtz denies ever receiving any confidences of Mercedes-Benz.
DISCUSSION
“Disqualification from continued representation is a prophylactic measure that courts have invoked in appropriate circumstances to prevent improper disclosure of clients’ confidences, or to ameliorate the effects of such disclosures where they have occurred ... [A] Court must attempt to prevent confidential information that might have been gained in the first representation from being used to the detriment of the *500 former client in the subsequent action.” Masiello v. PeriniCorp., 394 Mass. 842, 848 (1985) quoting Realeo Servs., Inc. v. Holt, 479 F.Supp. 867, 871 (E.D. Pa 1979). This Court recognizes that “[disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.” Id., quoting Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982).
The Supreme Judicial Court has recently announced that it will adopt a modified version of the American Bar Association’s Model Rules of Professional Conduct. The proposed rules would make several changes to the disciplinary rules now governing Massachusetts attorneys. The suggested changes provide more specific rules for a lawyer’s disqualification from working with a client due to a conflict of interest, especially where a lawyer has changed firms. However, since these changes are not yet in affect, this Court is bound by the Canons of Ethics and Disciplinary Rules in the Model Code of Professional Responsibility which currently govern members of the Massachusetts Bar. The two provisions that the Court will focus on, in deciding the motion to disqualify counsel, are Canons 4 and 9. The codification of these canons appears in Massachusetts Supreme Judicial Court Rule 3:07, Disciplinary Rules 4-101 and 9-101.
Disciplinary Rule 4-101 entitled “Preservation of Confidences and Secrets of a Client” states, in part,:
(A) “Confidence” refers to information protected by the attorney-client privilege under applicable law, and “secret” refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
(B) Except when permitted under DR 4-101(0, a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.
(2) use a confidence or secret of his client to the disadvantage of the client.
(3) use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
‘The conflict of interest in representing a current client with interests adverse to those of a former client arises from the attorney’s duty under Canon 4 to preserve his client’s confidences and secrets. Even after termination of the attorney-client relationship, a lawyer remains bound by the Code ... to preserve these confidences.” Bays v. Theran, 418 Mass. 685, 691 (1994) citing Masiello v. PeriniCorp., 394 Mass. 842, 847 (1985) quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1315 (1981). As previously noted, it is the duty of this Court to prevent confidential information which is attained in a previous representation from being used to the detriment of the former client in the subsequent action. However, “[w]here the judge determines that there exist no confidences from the first representation which would be relevant to the second, disqualification is unnecessary and the parties’ choice of counsel should prevail.” Masiello, 394 Mass, at 848.
The Canons of Ethics and Disciplinary Rules also dictate that “[a] lawyer should avoid even the appearance of professional impropriety”. Model Code of Professional Responsibility Canon 9, appearing in S.J.C. Rule 3:07, 382 Mass. 795 (1981). “Canon 9 should not be read to alter the ‘delicate balance’ created by the other canons between a client’s right to counsel of his choice and the maintenance of professional standards.” Wellman v. Willis, 400 Mass. 494, 503 (1987) (citations omitted). “If Canon 9 is the only disqualification consideration, generally it is ‘simply too weak and too slender a reed on which to rest a disqualification order.’ ” Id. quoting Freeman u. Chicago Musical Instrument Co., 689 F.2d 715, 723 (7th Cir. 1982).
In deciding this motion, the Court is confronted with the struggle of “ [reconciling the right of a person to counsel of his choice on the one hand, and the obligation of ‘maintaining the highest standards of professional conduct and the scrupulous administration of justice,’ on the other.” Mailerv. Mailer, 390 Mass. 371,373 (1983) quoting Hull v. Celanese Corp., 513 F.2d 568, 569 (2d Cir. 1975). “When disqualification occurs after employment has begun, it temporarily (and possibly permanently) disables the litigant in his effort to prosecute a claim or mount a defense. It is not surprising therefore that the code has been used increasingly as a catalog of pretrial tactics. When needless disqualification occurs as a result of these tactics, the veiy rules intended to prevent public disrespect for the legal profession foster a more dangerous disrespect for the legal process . . . When a lawyer, exercising his best judgement, determines that his employment will not bring him into conflict with the code, disqualification may occur only if the trial court determines that his continued participation as counsel taints the legal system or the trial of the cause before it.” Borman v. Borman, 378 Mass. 775, 787-88 (1979) (citations omitted).
It is unclear from the materials before the Court whether Holtz received confidential information while employed at Ropes & Gray concerning Mercedes-Benz. Only one of the four affidavits submitted in support of disqualification has potential merit. Sullivan, the staff investigator at Ropes & Gray, stated in his affidavit that he remembers many conversations between himself and Holtz concerning the Perkins investigation. Specifically, Sullivan remembers telling Holtz about specific sources, techniques and tactics that he used in order to test the veracity of the plaintiffs’ claims. Holtz denies ever communicating with Sullivan about the Perkins matter. He further states that he does not know any confidential information, data, or trade secrets pertaining to Mercedes-Benz.
Even if Holtz was privy to confidential information about the Perkins investigation, he is not seeking to *501 reveal or use these confidences or secrets to the disadvantage of Mercedes-Benz or for the advantage ofhimself or Perkins, in violation of DR 4-101(B)(1), (2) or (3). It appears from the pleadings and the subpoena to Ropes & Gray, that any confidential information is irrelevant. The plaintiffs only seek information which was disclosed by Ropes & Gray to the defendants and vice versa. Accordingly, even if this information was confidential, once it was disclosed it lost that status. Therefore, since this Court determines that there exist no confidences from the first representation which would be relevant to the second, disqualification is unnecessary and the parties’ choice of counsel should prevail. Masiello, 394 Mass, at 848.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion of Mercedes-Benz and Ropes & Gray to disqualify the counsel of Dwight G. Perkins and Jacqueline Perkins is DENIED.