John W. **BAKER** and Susan Baker, Plaintiffs,

v.

Trudy **COX**, et al., Defendants.

Civil Action No. 95–12477–PBS.

United States District Court, D. Massachusetts.

July 10, 1997.

Robert Walker, Walker & Venezia, Concord, MA, for John W. Baker.

Richard H. Spicer, Atty. Gen. Office, Lucy A. Wall, Atty. Gen. Office, Trial Div., Douglas

S. Brown, Atty. Gen. Office, Administrative Law Div., Boston, MA, for Janet G. McCabe, Thomas French, Jay Copeland, Patricia Huckery, Bradford G. Blodgett and Jane Meade.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTIONS FOR DISQUALIFICATION OF THE COMMONWEALTH, ENTRY OF JUDGMENT, SANCTIONS, AND FEES

SARIS, District Judge.

The plaintiffs, John and Susan Baker, have moved to disqualify the Office of the Massachusetts Attorney General from representing the defendants in this case and for entry of judgment on their behalf because the Commonwealth failed to disclose a conflict of interest involving one of the Commonwealth's attorneys, Sharon Pelosi, a Deputy General Counsel with the Executive Office of Environmental Affairs ("EOEA") (Docket No. 44). The plaintiffs have also moved for sanctions and for attorneys' fees related to these motions (Docket No. 56). The dispute here arises out of work performed by Ms. Pelosi while a law student at a law firm on one of the plaintiffs' related cases and her work performed as an attorney for the Commonwealth on the plaintiffs' current case before this Court, which concerns the same underlying facts. For the reasons set forth below, the Court *DENIES* the plaintiffs' motions for entry of judgment (Docket No. 44), sanctions (Docket No. 56), and attorneys' fees (Docket No. 56). The Court also *DENIES* the plaintiffs' motion for disqualification of the Office of the Attorney General (Docket No. 44).

### BACKGROUND

In October of 1993, plaintiffs hired McGregor & Shea to represent them in a matter involving an Environmental Impact Report required under the Massachusetts Environmental Protection Act ("MEPA") for their proposed pier project (*Baker v. Coxe*, Suffolk Superior Court, No. 93–5795C, 1994 WL 878942 (the "MEPA Action")). Sharon Pelosi, then Sharon Nicholls, was employed at McGregor & Shea from May 1993 to August 1995 as a law clerk. Between December 1993 and March 1994, Ms. Pelosi billed 24.15

hours on the plaintiffs' MEPA action. Her work included editing and cite-checking a summary judgment brief, attending oral argument on the summary judgment motion, and legal research on subject matter jurisdiction under Mass. Gen. L. ch. 91 for review of a license under MEPA. Plaintiffs claim that Ms. Pelosi attended meetings where the plaintiffs disclosed confidential information to their attorneys and discussed litigation strategies pertinent to this case. Ms. Pelosi and Gregor I. McGregor, her supervisor while at McGregor & Shea, deny that Ms. Pelosi participated in any such meetings.

After graduating from law school, Ms. Pelosi took a job with the Commonwealth as Special Counsel for Public Access at the Massachusetts Office of Coastal Zone Management ("MOCZM"). She was employed by MOCZM from December 1994 through May 1995. At MOCZM Pelosi performed legal research on public coastal access issues. During this time, Ms. Pelosi did not perform any work related to the plaintiffs' litigation. However, Ms. Pelosi continued to work for McGregor & Shea until August 1995 as Assistant Editor of the firm's newsletter writing about recent developments in Massachusetts environmental law. Ms. Pelosi also worked for McGregor & Shea as a contract attorney during this time for 12.5 hours. This work concerned legal research on the doctrine of prior public use and Mass. Gen. L. ch. 91 licenses issued to railroads. Ms. Pelosi disclosed her employment by McGregor & Shea to the Commonwealth at the time she commenced her work with MOCZM in accordance with Mass. Gen. L. ch. 268A and obtained its consent for her concurrent employment.

From May 1995 to the present, Ms. Pelosi has been employed by the Commonwealth as a Deputy General Counsel for EOEA. Once again, Pelosi disclosed to her supervisor her concurrent employment with McGregor & Shea and obtained consent to the employment. In August 1995, Pelosi stopped working as an Assistant Editor at McGregor & Shea and had no further contact with the firm.

After beginning with the EOEA, Ms. Pelosi learned that the Bakers had filed an action in state court against the EOEA concerning public records requests for documents related to their proposed pier project (*Baker v. Blodgett*, Middlesex Superior Court, No. 93–0820 (the "Public Records Action")). In her position with the EOEA, Ms. Pelosi responded to 29 public records requests by the Bakers. In July 1995, when Pelosi was first asked to respond to these requests, she discussed her involvement in the MEPA Action while at McGregor & Shea with Madelyn N. Morris, the Assistant Attorney General defending the Public Records Action. Morris and Pelosi decided that she did not need to recuse herself at that time due to the limited nature of the work she performed at McGregor & Shea and the ministerial nature of her role in the public records requests.

In July 1995, Morris informed Pelosi that the Bakers had moved to amend their MEPA Action complaint to add a number of counts and provided Pelosi with a copy of the Commonwealth's opposition brief. Pelosi did not perform any work on this brief.

The plaintiffs initiated this suit in November 1995 (the "Federal Action"). Pelosi reviewed the complaint, provided copies of it to the agency staff who were named as defendants, and provided comments to EOEA General Counsel Martin Suuberg. Assistant Attorney General Edward DeAngelo represented the Commonwealth and was unaware of Ms. Pelosi's prior involvement with the Bakers.

In July 1996, Assistant Attorney General Gregory Gilman took over the defense of the Federal Action and contacted Ms. Pelosi requesting her assistance in the case. Ms. Pelosi helped to prepare defendants' answer and defendants' automatic discovery disclosures.

On October 18, 1995, Pelosi attended a meeting with Assistant Attorney General Kristin McIntosh, Gilman, and other agency staff. The meeting concerned the Public Records Action and the Federal Action. At the close of the meeting, Pelosi disclosed her work for the Bakers at McGregor & Shea. Gilman and McIntosh told Pelosi to seek advice from the MBA Ethics Committee. A staff attorney at the Ethics Committee told Pelosi informally that she could continue working on both the Public Records Action and the Federal Action. However, on November 6, 1996, a Member of the Ethics Committee informed Pelosi that she should rescue herself from these matters. On that same date, after learning of this most recent advice, the Office of the Attorney General ("OAG") determined that Pelosi should cease all involvement in these matters. On that same date, after learning of this most recent advice, the Office of the Attorney General ("OAG") determined that Pelosi should cease all involvement in these matters. On November 19, 1996, the full Ethics Committee advised Pelosi to recuse herself from the Federal Action absent the consent of the Bakers. On November 20 and 21, the OAG sent letters to the Bakers' attorneys disclosing Pelosi's prior work at McGregor & Shea and asking for the Bakers' consent to Pelosi's continued involvement with the case. The Bakers declined to give their consent.

## DISCUSSION

### I. CONFLICT OF INTEREST LAW

Plaintiffs argue that the entire office of the Attorney General must be disqualified from representing the Commonwealth pursuant to Canons 1, 2, 4, 5, 7 and 9 of the American Bar Association Code of Professional Responsibility, because the current case is "substantially related" to the former case in which Pelosi represented the Bakers.

Local Rule 83.6(4)(B) of this Court adopts the standards for professional conduct that are set forth by the Massachusetts Supreme Judicial Court. Rule 3:07 of the Supreme Judicial Court adopts, with slight modifications, the Canons set forth in the ABA Code of Professional Responsibility. The Canons relied on by the plaintiffs, especially Canons 4 ("A Lawyer Should Preserve the Confidences and Secrets of a Client") and 9 ("A Lawyer Should Avoid Even the Appearance of Professional Impropriety"), have been interpreted as prohibiting "a lawyer from undertaking a representation adverse to a former client on subject matter related to the business with the former client, although

there is no Disciplinary Rule explicitly prohibiting such subsequent representation." *NFC, Inc. v. General Nutrition, Inc.*, 562 F.Supp. 332, 333 (D.Mass.1983) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir.1973); *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir.1975); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341 (5th Cir.1981); *T.C. Theatre Corp. v. Brothers Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y.1953)).

"The 'substantial relationship' test has been widely employed in both Federal and State courts to resolve disqualification issues." *Masiello v. Perini Corp.*, 394 Mass. 842, 848, 477 N.E.2d 1020 (1985) (and cases cited). The Supreme Judicial Court has described the test as follows:

> The "substantial relationship" test, first enunciated in *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953), has been summarized as follows: "Despite the existence of a prior attorney-client relationship, an attorney will not be disqualified from taking a case unless the current representation is both adverse to the interests of the former client and substantially related to the former representation." Note, *Developments in the Law: Conflicts of Interest in the Legal Profession*, 94 Harv. L.Rev. 1244, 1323 (1981). "The *T.C. Theatre* rule is prophylactic in that it proscribes the subsequent representation on the sole ground that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidentiality to the former client. The client need never prove that the attorney *actually* misused the confidences to the client's disadvantage" (emphasis in original). *Id.* at 1318.

394 Mass. at 849 n. 5, 477 N.E.2d at 1025 n. 5.

The court noted that "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Id.* at 848, 477 N.E.2d at 1024 (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982)). However, because the trial court made a factual finding that the attorney received no confidences germane to the instant litigation during his earlier representation, the court did not reach the question of whether it should adopt the "substantial relationship" test in deciding problems of successive representation. *Id.* at 849 n. 5, 477 N.E.2d at 1025 n. 5.

The most recent Massachusetts decision concerning the "substantial relationship" test is *Bays v. Theran*, 418 Mass. 685, 639 N.E.2d 720 (1994). In that case, one of the plaintiffs had consulted with an attorney concerning possible representation. The plaintiff did not hire the attorney to represent him. However, different attorneys in the firm later represented the defendants in the case. The Supreme Judicial Court upheld the trial court's findings that the plaintiff had transmitted confidential information in the context of an attorney-client relationship and that there was a substantial relation between the current litigation and the prior consultation. It also upheld the trial court's determination that the attorney should be disqualified from the trial involving the subject matter of the confidence but that the law firm could represent the defendants in the separate trial on unrelated matters while isolating the tainted attorney from the trial attorneys. Once again, the Supreme Judicial Court flirted with the "substantial relationship" test, but declined to embrace it. The appropriate test governing successive representations remains an open one.

## II. APPLICATION OF CONFLICT OF INTEREST LAW

■ Assuming, without deciding, that Pelosi's work at McGregor & Shea as a law student may rise to the level of prior "representation" for purposes of the Canons, the Court nonetheless concludes that the entire Office of the Attorney General should not be disqualified from representing the defendants in this case.

First, there is no evidence that client confidences were relayed from Pelosi to any assistant attorneys general although there was a substantial relation between the successive representations. Second, it is far from cer-

tain that client confidences were in fact transmitted to Ms. Pelosi. The nature of her work on behalf of the Bakers while at McGregor & Shea was non-factual, consisting largely of legal research and cite-checking. Ms. Pelosi and her supervising attorney at McGregor & Shea have represented to this Court that she was not in a position while at the firm to receive such information. The defendants argue with some force that the assumption that confidences have been transmitted is not appropriate in the context of a legal student intern. Although the Bakers vigorously protest that she was involved in a meeting where attorney—client confidential communications occurred, the Court need not resolve this factual dispute. Under these circumstances, screening the tainted attorney from further participation in the case is sufficient to eliminate any prejudiced.

■ Finally, the Court's decision must take account of the draconian nature of the relief the plaintiffs seek—disqualification of the entire Office of the Attorney General. In the absence of absolute necessity, the Court will not order disqualification of the entire Office of the Attorney General, which at all times acted ethically in this matter. *Masiello*, 394 Mass. at 848, 477 N.E.2d at 1024. Such necessity does not exist here. The Commonwealth has offered to transfer the defense of this matter to new assistant attorneys general in a separate division who have had no contact with Pelosi or any cases involving the plaintiffs. (Commonwealth's Opp. Br. at 3 n. 2.) In addition to substituting counsel [1] if requested by plaintiffs, the Office of the Attorney General and the EOEA shall build a "Chinese wall" between Ms. Pelosi and all persons (legal and non-legal) involved in this litigation.

### ORDER

Based on the foregoing, the Court:

1. *DENIES* the plaintiffs' motions for entry of judgment (Docket No. 44), sanctions (Docket No. 56), and attorneys' fees (Docket No. 56); and

2. *DENIES* the plaintiffs' motion for disqualification of the Commonwealth (Docket

No. 44), subject to the conditions set forth in this opinion.

---

1. Plaintiffs initially rejected the offer to substitute counsel.