THE McCOURT COMPANY, INC. *vs.* FPC PROPERTIES, INC.
& another.[1]

Suffolk.   January 6, 1982. — May 6, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Canons of ethics, Representation of differing interests,
   Disqualification.

Disciplinary Rules 5-105 (B) and 5-105 (C) barred a law firm from repre-
   senting a business corporation as plaintiff in an action against another
   corporation and its parent corporation, without the consent of the
   parent corporation for which the law firm was also acting as counsel in
   the defense of several unrelated actions, notwithstanding the fact that
   the selection of the law firm as defense counsel had been made by the
   parent corporation's liability insurer.   [146-152]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 2, 1981.

A motion to disqualify counsel was heard by *Abrams*, J.

After an interlocutory appeal was authorized in the Ap-
peals Court by *Armstrong*, J., the Supreme Judicial Court
ordered direct appellate review on its own initiative.

*Michael S. Greco* (*Jules I. Krell* with him) for the defend-
ants.

*Richard L. Neumeier* (*James F. Meehan* with him) for
the plaintiff.

WILKINS, J.   A law firm that represents client A in the
defense of an action may not, at the same time, be counsel
for a plaintiff in an action brought against client A, at least
without the consent of both clients.   It does not matter that
the law firm represents client A as a defendant because it
was selected as A's counsel by A's liability insurer.   See

---

[1] Cabot, Cabot & Forbes Co.

Opinion 80-10, Opinions of the Committee on Professional Ethics of the Massachusetts Bar Association, 66 Mass. L. Rev. 50 (1981). The law firm is attorney for the insured as well as the insurer. See *Imperiali* v. *Pica*, 338 Mass. 494, 499 (1959). Nor does it matter that client A is a corporation or that client A consists, collectively, of a parent corporation and various wholly owned subsidiaries. It is also irrelevant that the lawsuits are unrelated in subject matter and that it appears probable that client A will not in fact be prejudiced by the concurrent participation of the law firm in both actions. The undivided loyalty that a lawyer owes to his clients forbids him, without the clients' consent, from acting for client A in one action and at the same time against client A in another. If there are any special circumstances in which an exception to this general rule should be recognized, no such circumstances have been demonstrated here, and we are aware of no case in which such an exception has been recognized and applied.

The provisions of Disciplinary Rules 5-105 (B) and 5-105 (C), appearing in S.J.C. Rule 3:07, as appearing in 382 Mass. 781 (effective January 1, 1981), explicitly forbid one attorney from acting for a client in the defense of one action and against that same client as counsel in a second action unless each client consents. "A lawyer shall not continue multiple employment . . . if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C)." DR 5-105 (B). Acting for a client in one action and against the same client in another action constitutes "representing differing interests" within the meaning of DR 5-105 (B). "Differing interests" does not mean "conflicting interests." See A.L. Kaufman, Problems in Professional Responsibility 37 (1976). Rule DR 5-105 (C) states that "a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each *and if each consents to the representation* after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each" (emphasis supplied). Even if it is clear that the

attorney can adequately represent the interests of each client where he represents differing interests, he may not do so without the consent of each.

This action, brought on behalf of The McCourt Company, Inc. (McCourt), on April 2, 1981, seeks specific performance of an option agreement and damages against FPC Properties, Inc., a wholly owned subsidiary of Cabot, Cabot & Forbes Co., with respect to certain property in the Fort Point Channel area of Boston. We shall refer to Cabot, Cabot & Forbes Co. and its wholly owned subsidiaries collectively as CC & F. On April 22, 1981, attorneys for the Boston law firm of Parker, Coulter, Daley & White (Parker, Coulter) entered an appearance for McCourt. By an amended complaint, the parent corporation, Cabot, Cabot & Forbes Co., was named as a defendant as guarantor of certain obligations of FPC Properties, Inc. Cabot, Cabot & Forbes Co. has a substantial interest in the litigation. It is not merely a nominal party.

In May, 1981, counsel for the defendants moved to disqualify Parker, Coulter from representing McCourt on the ground that Parker, Coulter had represented CC & F as defense counsel in numerous personal injury cases throughout the Commonwealth and that Parker, Coulter continued to so represent CC & F. Parker, Coulter and CC & F have agreed that at all material times Parker, Coulter has represented CC & F in the defense of personal injury actions, and that Aetna Life and Casualty Insurance Company, insurer for CC & F, selected Parker, Coulter to represent CC & F. Four such tort actions were pending on October 26, 1981, one of which CC & F's insurer apparently referred to Parker, Coulter after this action was commenced.

In opposition to the motion to disqualify it, Parker, Coulter argued that disqualification is not required in every simultaneous representation case. It argued that, in this case, there is no actual or apparent conflict of loyalties or obligations; that it has been entrusted with no confidences or secrets that could be used against CC & F; and that it is unlikely that any adverse effect on its independent judg-

ment on behalf of CC & F would result from its adversary posture toward CC & F in this action. We assume, although the record does not show it, that McCourt has consented to both (1) Parker, Coulter's representation of it in an action against another client of Parker, Coulter (CC & F) and (2) Parker, Coulter's representation of CC & F in a personal injury action referred to Parker, Coulter after this action was commenced.

The Superior Court judge who heard the motion essentially accepted this argument and denied the motion to disqualify Parker, Coulter. He concluded that the facts warranted an exception to the general rule because (1) Parker, Coulter's independent professional judgment in its representation of CC & F would not be adversely affected; (2) Parker, Coulter was not representing differing interests (which he defined as "conflicting, inconsistent, diverse or otherwise discordant"); and (3) CC & F had not shown that Parker, Coulter would not represent CC & F properly. We transferred CC & F's appeal here on our own motion.[2] For reasons we have already stated, the standards and burden of proof applied by the judge were not the appropriate ones. The motion to disqualify Parker, Coulter should have been allowed.

In other jurisdictions where the propriety of simultaneous representation of a client in one action and of his opponent in another action, involving an unrelated subject, has been considered, courts have viewed DR 5-105, and the attorney's ethical obligations, as we have stated them. See *International Business Machs. Corp.* v. *Levin*, 579 F.2d 271, 280 (3d Cir. 1978) ("We think, however, that it is likely that some 'adverse effect' on an attorney's exercise of his inde-

---

[2] The appeal is proper because a single justice of the Appeals Court authorized the defendants to pursue an interlocutory appeal from the order denying disqualification of Parker, Coulter. See *CUNA Mut. Ins. Soc'y* v. *Attorney Gen.*, 380 Mass. 539, 540 (1980). We need not, therefore, consider whether, in the absence of such an authorization, an interlocutory appeal could be taken. In the Federal courts, an order denying disqualification of counsel is not subject to appellate review until after final judgment on the merits of the underlying case. See *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 379 (1981).

pendent judgment on behalf of a client may result from the attorney's adversary posture toward that client in another legal matter"); *Fund of Funds, Ltd.* v. *Arthur Andersen & Co.*, 567 F.2d 225, 232-233 (2d Cir. 1977); *Cinema 5, Ltd.* v. *Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976) ("Under the Code [of Professional Responsibility], the lawyer who would sue his own client, asserting in justification the lack of 'substantial relationship' between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed. Putting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned"); *Pennwalt Corp.* v. *Plough, Inc.*, 85 F.R.D. 264, 271 (D. Del. 1980); *Jeffry* v. *Pounds*, 67 Cal. App. 3d 6, 10-12 (1977); *Grievance Comm. of the Bar of Hartford County* v. *Rottner*, 152 Conn. 59, 65 (1964). See also Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1293-1294, 1302-1303 (1981).

Although Parker, Coulter argues that opinions elsewhere are not apt in this case and that some leave room in their language for an exception to the general rule, its basic argument is that this court should fashion an exception to the general rule where a commercial corporation is involved.[3] No other court has recognized such an exception. There does not appear to be any tendency in favor of such an exception. The ABA Model Rules of Professional Conduct (Proposed Final Draft 1981) advanced by the so called Kutak

---

[3] Cases involving interests of a former client; of course, stand on a different footing.

It seems that the *Cinema 5, Ltd.*, and *International Business Machs.* cases, cited immediately above, dealt with versions of DR 5-105 (B) parallel to that which existed in the ABA Code of Professional Responsibility just prior to its amendment in 1974. As it then appeared, the disciplinary rule did not forbid simultaneous representation of "differing interests," but only simultaneous representation likely to adversely affect the lawyer's independent professional judgment. Because of this circumstance, the conclusions of the Second and the Third Circuit Courts of Appeals are perhaps even more persuasive in support of the result we reach.

Commission make no distinction between clients who are natural persons and those that are corporations. See rule 1.7, set forth in the margin.[4] The Kutak Commission's statements on rule 1.7 include views that are wholly consistent with our view of DR 5-105 (B) and DR 5-105 (C).[5]

Parker, Coulter points to language appearing in Opinion No. 75-7 at 7-8 (March 13, 1975), issued by the Committee on Professional Ethics of the Massachusetts Bar Association. That opinion, which is quoted in relevant part in the margin,[6] recognized that a lawyer should not take a case against

---

[4] "RULE 1.7 *CONFLICT OF INTEREST: GENERAL RULE*

"(a) A lawyer shall not represent a client if the lawyer's ability to consider, recommend or carry out a course of action on behalf of the client will be adversely affected by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests.

"(b) When a lawyer's own interests or other responsibilities might adversely affect the representation of a client, the lawyer shall not represent the client unless:

"(1) The lawyer reasonably believes the other responsibilities or interests involved will not adversely affect the best interest of the client; and

"(2) The client consents after disclosure. When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved."

[5] "Ordinarily, a lawyer may not act as advocate against a person the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer engaged in a suit against an enterprise with diverse operations may accept employment by the enterprise in an unrelated matter if doing so will not affect the lawyer's conduct of the suit and if both clients consent upon disclosure." Rule 1.7 (reporter's notes), *supra* at 49.

"Absent client consent, a lawyer cannot undertake representation adverse to a current client even in an entirely unrelated matter. E.g., IBM Corp. v. Levin, 579 F.2d 271 (3d Cir. 1978); Chateau de Ville Productions v. Tams-Whitmark Music Library, 474 F. Supp. 223 (S.D.N.Y. 1979); Grievance Comm. v. Rottner, 203 A.2d 82 (Conn. 1964); In re Gillard, 271 N.W.2d 785 (Minn. 1978); In re Cohn, 216 A.2d 1 (N.J. 1966); In re Hansen, 586 P.2d 413 (Utah 1978)." Rule 1.7 (reporter's notes), *supra* at 54.

[6] "It seems to be a generally accepted standard of ethical conduct that a lawyer should not take a case against a present client of himself or his

a present client unless the client consents, at least where the client is an individual person. The committee expressed concern that, where a client is a large corporation, the corporation may distribute its legal business with the view to barring any local attorney from handling cases against the corporation. However, the Committee of Professional Ethics did not pass on this question because the issue was not presented on the facts before it. Similarly, we need not pass on the question because Parker, Coulter has not shown any such anticipatorily defensive behavior by CC & F.

We conclude by noting that this case does not involve any reprehensibly unethical conduct. It represents an honest disagreement concerning the appropriate application of the Code of Professional Responsibility. CC & F has not objected, as far as the record discloses, to Parker, Coulter's continuing representation of it in the various personal injury actions brought against CC & F.

We recognize that McCourt has an interest in having counsel of its own choosing, but McCourt's interest cannot predominate in all instances. That right is not absolute and must yield in these circumstances. See *International Business Machs. Corp.* v. *Levin*, 579 F.2d 271, 283 (3d Cir. 1978); *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors*

---

firm, unless the client consents, at least where the client is an individual person.
  "...

"However, we are concerned with the implications of the [*Grievance Comm.* v.] *Rottner* [152 Conn. 59 (1964)] rationale [i.e., that a client is entitled to the undivided loyalty of his lawyer] if it is extended to large commercial clients. It is obvious that a large bank, insurance company, or industrial company which has a considerable volume of legal work may find it advantageous to spread that work among a number of local lawyers or law firms in the expectation that none of them then will be left free to handle cases against the company.
  "If both clients give informed consent, we believe that a lawyer properly may undertake an adversary matter against such a commercial client even if it is his present client. We express no opinion at this time as to whether or not the lawyer could undertake such a case without the consent of the commercial client, preferring to defer consideration of that matter until it is put to us in a specific factual context."

*Corp.*, 518 F.2d 751, 757 (2d Cir. 1975). In the absence of consent by CC & F (and McCourt), DR 5-105 (B) and DR 5-105 (C) bar Parker, Coulter from representing McCourt in this action while Parker, Coulter is acting as counsel for CC & F in other matters.

The order of the Superior Court judge denying the motion to disqualify Parker, Coulter is vacated. An order allowing that motion should be entered on such conditions as seem appropriate, in the discretion of the judge, concerning Parker, Coulter's cooperation over a limited transitional period with successor counsel for McCourt and concerning delivery of appropriate documents to successor counsel. The process of promptly disengaging Parker, Coulter from this case should be carried out with fair consideration of the interests of McCourt, as well as, of course, the interests of CC & F.

*So ordered.*