Burnes, J.
Plaintiff, Leslie E. Bioomenthal, brought this action in contract to recover damages arising out of defendant, Frederic Halstrom’s alleged breach of contract. Plaintiff alleges, inter alia, that defendants failed to give plaintiff an agreed upon referral fee and that retention of the fee amounts to an unfair or deceptive practice in violation of provisions of the Massachusetts Consumer Protection Act, G.L.c. 93A. The matter is before this court on defendants’ motion for summary judgment pursuant to Mass.R.Civ.P. 56, on all counts of plaintiffs complaint. For the reasons discussed below, defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows. As a result of a fire on January 18, 1992, at 27 Nichols Street, Gardner, Massachusetts, Brandin Rivard (“Brandin”), a minor child, was killed. Tammy Paradis (“Paradis”) was the mother, and Roland Rivard (“Rivard”) was the father of Brandin.
As of January 18, 1992, plaintiff, Leslie E. Bioomenthal (“Bioomenthal”), was admitted to the practice of law as an attorney in the Courts of the Commonwealth of Massachusetts, and was a shareholder in the Boston, Massachusetts law firm of Sis-son, Bioomenthal and Allen, P.C. (“SBA”). Jeffrey P. Allen (“Allen”), and Alice B. Burkin (“Burkin”) were also shareholders in SBA on January 18, 1992 and continuously through at least August 1992. Like Bioomenthal, Allen and Burkin were admitted to the practice of law as attorneys in the Courts of Commonwealth of Massachusetts.
As of January 18, 1992, Attorney Edward A. Sokoloff (“Sokoloff j, had a telephone number, listed in the telephone book, which was connected to a telephone line in the Boston office of SBA and which was known in that office as “the Sokoloff line.”
Sometime between January 18, 1992 and January 25, 1992, Rivard called into the office of SBA on the Sokoloff line, seeking legal advice concerning the recovery of damages on account of Brandin’s death in the fire. Burkin answered the call and, because of a potential conflict of interest, referred Rivard to defendant, Attorney Frederic N. Halstrom (“Halstrom”) for legal advice and representation.
At all times relevant, Halstrom was admitted to the practice of law as an attorney in the Courts of the Commonwealth of Massachusetts, and was a shareholder in defendant, Halstrom Law Offices, P.C. Bur-kin never disclosed to Halstrom the precise nature of SBA’s conflict. Any contact between members of SBA and members of Brandin’s family did not extend beyond this initial call; however, Burkin was repeatedly reassured by Halstrom that a referral fee would be paid. Moreover, Bioomenthal corresponded with Halstrom regarding the referral fee.
At the time of Rivard’s phone call, Allen’s brother was an executive with Congress Really, a company affiliated with Congress Management Limited Partnership (“Congress Management”), the management company of 27 Nichols Street. Sometime between the fire and Rivard’s telephone call, Allen provided legal advice concerning the fire to personnel with Congress Realty.
On April 3, 1992, Paradis, through Halstrom, commenced an action in Suffolk Superior Court captioned Tammy Paradis, et al. v. Congress Management Company Limited Partnership, et al., Civil Action No. 92-02053 (the “Paradis Action”), in which she sought damages on account of the wrongful death of Brandin. *9 In March 1995 a jury in the Paradis Action found Congress Management and G&C Investment Corporation liable, and returned verdicts for plaintiffs. The Paradis Action was definitively resolved by means of a Settlement Agreement and Release (the “Release”), dated April 9, 1996. The Release provided that defendants, Halstrom and Halstrom Law Offices, P.C., would receive the agreed upon thirty-three and one-third percent contingency fee, in the amount of eight hundred thiriy-three thousand, three hundred thirty-three dollars ($833,333).
In this action, Bloomenthal’s complaint contains five counts against defendants seeking a referral fee of one-third of the $833,333 contingent fee. The first four counts sound in contract. The fifth count alleges Halstrom violated G.L.c. 93A, §§2 and 11.
Defendants answered the complaint raising numerous affirmative defenses and filed a Counterclaim for violation of G.L.c. 93A, §§2 and 11. This action now comes before this court on the defendants’ motion for summary judgment on all counts of Bloomenthal’s Complaint.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving parly to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). “The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoted with approval in G.S. Enterprises, Inc, v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991)).
The moving party bears the burden of affirmatively demonstrating the absence of triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the nonmoving party’s case or by demonstrating that the nonmoving party has no reasonable expectation of proving an essential element of his case at trial. See Kourouvacilis v. Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
A. Breach of Contract (Count I)
The first count of Bloomenthal’s Complaint alleges that Halstrom is liable for breach of contract. Bloomenthal claims Halstrom agreed to pay him a referral fee and that Halstrom breached their agreement by not paying the fee. Defendants deny Halstrom breached the contract for several reasons. The crux of defendants’ argument is that the contract was unenforceable and therefore there was no breach.
It is well established that “a contract which provides for performance in a manner contrary to law cannot support an action for its breach by one who participated in making it.” Fouquette v. Millette, 310 Mass. 351, 354 (1941), and cases cited. No court can recognize or otherwise determine and enforce the interests of the parties arising under such a contract. Id. The facts, viewed in the light most favorable to Bloomenthal, demonstrate that as a matter of law, it would be contrary to the rules of professional conduct for Bloomenthal to accept employment from any party bringing a claim as a result of the fire, e.g., Paradis or Rivard.[2]
1. Conflict of Interest
Defendants contend any referral fee agreement was unenforceable because SBA could not represent any member of Brandin’s family due to a conflict of interest. Specifically, defendants assert that in January 1992 when Rivard telephoned the SBA office seeking legal advice, Allen had already provided legal advice to personnel of Congress Realty affiliated companies, regarding Congress Management’s potential liability relating to the fire. Bloomenthal does not seriously dispute this fact. What he argues is that he never was privy to any confidential information from Congress Really or its affiliated companies.[3]
The practice of law by all members of the Massachusetts Bar is regulated by the Canons of Ethics and Disciplinary Rules, modeled after the American Bar Association Code of Professional Responsibility (ABA Code), found in Rule 3:07 of the Supreme Judicial Court Rules. 382 Mass. 698, 768 (1981).[4] “The Disciplinary Rules . . . are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.” ABA Code, Preliminary Statement. Specifically, with regard to the potential for conflict in the underlying action, Disciplinary Rule 5-105 provides:
Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer
(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).
(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).
*10 (C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.
(D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate or any other lawyer associated with him or his firm may accept or continue such employment. . .
359 Mass. at 816.
Disciplinary Rule 5-105, in effect since October 2, 1972, is clear that a conflict arises whenever there is the slightest hint of undivided loyally. With regard to the representation of multiple clients, the Supreme Judicial Court, in McCourt Co., Inc. v. FPC Properties, Inc., 386 Mass. 145, 146 (1982), barred a law firm from representing a client due to a conflict of interest where the firm already represented a plaintiff in a lawsuit against that client. There, the court ruled the conflict prohibited multiple client representation even where the lawsuits were unrelated in subject matter and there was no prejudice to the client. Id. In support of its decision, the court reasoned “(t]he undivided loyalty that a lawyer owes to his clients forbids him, without the clients’ consent, from acting for client A in one action and at the same time against client A in another.” Id.
Here, the moment that Allen tendered legal advice to Congress Realty, SBA had a conflict of interest if any member of SBA, including Bloomenthal, offered legal advice or representation to any other individual or entity involved in the fire. Bloomenthal, therefore, would have been precluded from accepting Brandin’s family members as clients because his loyalty was indisputably divided.
The concern expressed in DR 5-105 is that a lawyer’s loyalty towards a client, and the exercise of independent judgment on behalf of a client, should not be compromised or diluted by competing interests. See Gilda M. Tuoni, Massachusetts Attorney Conduct, Issue O, at 5-3 (1992). The attorney-client relationship begins with the initial contact, regardless of whether a fee was paid, Mailer v. Mailer, 390 Mass. 371, 374 (1983), and extends until it is terminated. It is impossible for a lawyer to exercise independent judgment with regard to one client when at certain points in the relationship there is a conflict with another client’s competing interest. Further, in cases of doubt, lawyers “must resolve all questions against the acceptance of employment whenever such acceptance may impinge upon the interests of his present and former clients.” (Emphasis supplied.) Compare Mailer v. Mailer, supra at 375 (where lawyer was not disqualified by conflict because information learned in one hour interview with plaintiff was matter of public record and not used against plaintiff at trial). Clearly, Bloomenthal was required not to accept employment from Brandin’s family members because of the relationship between SBA and Congress Realty.
2. Referral Fee Criteria
Bloomenthal makes the alternative argument that he is entitled to a referral fee even if the court determines he had a conflict of interest that precluded an attorney-client relationship with members of Brandin’s family. Defendants, on the other hand, argue that an attorney with a conflict can never accept a referral fee.
The Massachusetts Bar Association Committee on Professional Ethics (the “Committee”) has issued two opinions that address the propriety of referral fees for lawyers caught in a conflict of interest. Recognizing that these opinions do not come from a committee with official governmental status, they nevertheless offer this court guidance. Both opinions were written with regard to the rules of professional conduct in place in 1992, i.e. the time Bloomenthal’s conflict appeared. According to the Committee, the payment of a referral fee is not appropriate “in the situation where the referring attorney cannot handle the case because of a conflict of interest.” MBA Opinion No. 76-26 (1976). See also MBA Opinion 80-10 (1980). Accord ADA Informal Opinion No. 1088 (1968) (fees may not be divided with a lawyer who is under a legal or ethical impediment to representing a client). The well-reasoned rationale behind this rule is that in order for a referral fee to be proper, the “client” must consent to the employment of the other lawyer, yet, the “client” can never actually be a client because of a conflict of interest. See MBA Opinion No.76-26, supra; Tuoni, supra at 2-64. Theoretically, the attorney-client relationship has never been established. DeVaux v. American Home Assurance Co., 387 Mass. 814, 817 (1983). Consequently, Bloomenthal is not entitled to a referral fee.
Where, as here, performance of an agreement is contrary to established principles of law, this court cannot recognize or enforce the interests of either party arising under such a contract. Fouquette v. Millet, supra at 354. Based on the foregoing, viewing the facts in the light most favorable to Bloomenthal, any attorney-client relationship between Bloomenthal and members of Brandin’s family would have been precluded by the rules governing attorney conduct, and so any agreement with Halstrom is unenforceable as a matter of law. Consequently, Bloomenthal is not entitled to a referral fee for tire Paradis Action. Summary judgment must issue on Count I against defendants for breach of contract.
B. Promissoiy Estoppel (Count II)
Bloomenthal contends that the theory of promissory estoppel allows him to recover the referral fee even if tire contract is not enforced. Bloomenthal argues that because he reasonably relied on Halstrom’s promise that he would pay Bloomenthal a referral fee, a binding contract was formed between Halstrom and himself on the basis of promissory estoppel.
*11 A promise may be enforced because of the promisee’s reasonable and detrimental reliance. See Rooney v. Paul D. Osborne Desk Co., Inc., 38 Mass.App.Ct. 82, 83 (1995) (noting the Supreme Judicial Court’s conscious decision not to adopt the phrase “promissory estoppel” in Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 761 (1978)).
Here, taken in the light most favorable to Bloomenthal, Halstrom promised to pay Bloomenthal a referral fee in the amount of one-third of any contingency fee recovered by Halstrom. Bloomenthal argues that he reasonably relied on this promise when he referred the Paradis Action to Halstrom, and that he relied to his detriment because he would have realized a referral fee by referring the case to another attorney who would have paid the fee. This court has established that Bloomenthal was not entitled to a referral fee because he was prohibited from accepting employment by any member of Brandin’s family. Consequently, there can be no reasonable reliance by nor any detriment to Bloomenthal under this legal theory.
As a matter of law, Bloomenthal is unable to set forth specific facts to demonstrate that he relied on Halstrom’s promise to his detriment. Accordingly, summary judgment should enter on Count II.
C.Unjust Enrichment (Count III)
In instances, like here, involving an unenforceable contract, quantum meruit recovery is based on the theory of unjust enrichment. See Salomon v. Terra, 394 Mass. 857, 859 (1985) (builder not entitled to recovery on quasi-contract theory where services rendered were simply in builder’s self-interest). Recoveiy under this theory is derived from the principles of equity and fairness. See J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986). “The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party.” Salamon, supra.
Here, any monies gained through settlement of the Paradis Action were realized as a result of work performed exclusively through Halstrom’s efforts. Bloomenthal did not perform any work prior to making the referral. In fact, one could make the argument that Bloomenthal would be unjustly enriched if he were awarded approximately $275,000 as a result of making a phone call.
Further, as this court has determined, there is no detriment to Bloomenthal. To grant recovery to Bloomenthal in this case on the basis of quantum meruit flies in the face of equity and fairness. Consequently this court grants summary judgment on Count III of Bloomenthal’s complaint.
D.Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV)
Bloomenthal suggests that he is entitled to the referral fee because of Halstrom’s alleged breach of the implied covenant of good faith and fair dealing. A claim based on a breach of this covenant is dependent upon the presence of an underlying contract that binds the parties. The above discussion clearly demonstrates that any contract, even if there were one, would be unenforceable. Therefore Bloomenthal has no reasonable expectation of proving the breach, or for that matter the existence, of this covenant at trial. Accordingly, summary judgment must enter on Count IV.
E. Chapter 93A, §§2 and 11 (Count V)
Bloomenthal makes the final argument that Halstrom engaged in “unfair and deceptive acts or practices” under G.L.c. 93A, §§2 and 11. The alleged violations occurred when Halstrom agreed to pay Bloomenthal a referral fee in order to secure the referral, subsequently failed to disclose the fee agreement to either Rivard or Paradis, and then repudiated the agreement when it came time to pay Bloomenthal.
The purpose of 93A is to instill a general duty of good faith and fair dealing in business transactions. Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 299 (1980). For Bloomenthal’s 93A claim to survive summary judgment, there must be some conduct alleged that falls "within at least the penumbra of some common law, statutory, or other established concept of unfairness . . . [or] is immoral, unethical, oppressive, or unscrupulous.” Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 729 (1989).
This court sees no unfair act in Halstrom’s refusal to pay the referral fee he allegedly promised to pay. It is clear from the foregoing that Bloomenthal was precluded by the Disciplinary Rules from earning a referral fee. As an attorney licensed to practice law in this commonwealth, he is charged with knowledge of the rules of attorney conduct. Bloomenthal cannot now complain that a failure to pay this fee is unfair. Therefore, summary judgment is appropriate and must be granted on Count V.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment be ALLOWED.

 For purposes of this motion, the court will address whether it would have been possible for Bloomenthal to have represented any member of Brandin’s family.

 Whether or not Bloomenthal was privy to confidential information is irrelevant because he is prohibited, by Disciplinary Rule 5-105(D), as set forth below, from representing any client who cannot be represented by other members of his law firm. The justification for 5-105(D) is that the “relations of partners in a law firm are so close that the firm, and all the members thereof, are barred from accepting employment, that any one member of the firm is prohibited from taking.” ABA Formal Opinion No. 33 (1931).

 The Canons of Ethics and Disciplinary Rules were originally adopted as S.J.C. Rule 3:22. 359 Mass. 787, 796 (1972). However, they were later amended so as to constitute S.J.C. Rule 3:07 in 382 Mass. 698, 768 (1981). These are the rules relevant to the actions in this case.