[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISQUALIFY DEFENDANT'S ATTORNEY (POST JUDGMENT) (DOCKET ENTRY NO. 194.00)
The plaintiff has moved to disqualify counsel for the defendant and her law firm on the ground that her and its representation of the defendant in these post judgment proceedings present a conflict of interest given plaintiff's consultation with one of the partners of defendant's attorney's law firm in 1996 prior to the institution of the complaint for dissolution.
A decree of dissolution of the parties' marriage was entered on May 21, 1997, before Ballen, J. A separation agreement of that date was submitted to the court, was approved and was incorporated in the decree. At that time the plaintiff was represented by his present attorney, Howard A. Jacobs. The defendant was then represented by Harold R. Burke.
Post judgment motions to be heard by the court are as follows:
1. Plaintiff's Motion for Contempt involving issues of visitation dated May 26, 1999 (Docket Entry No. 198.00);
2. Defendant's Objection to Motion for Contempt dated June 1, 1999 (again involving issues of visitation) (Docket Entry No. 195.00);
3. Defendant's Motion for Appointment of Guardian Ad Litem for the Minor Children dated June 1, 1999 (Docket Entry No. 196.00)
4. Defendant's Motion for Orders Regarding Location of the CT Page 13454 Children's Residence dated June 1, 1999 (Docket Entry No. 197.00)
5. Plaintiff's Motion for Reappointment of Attorney for Children dated May 26, 1999 (Docket Entry No. 199.01);
6. Defendant's Motion for Modification of Orders Regarding Visitation dated June 1, 1999 (Docket Entry No. 200.00).
The pending motions all involve issues of custody and visitation. There are two children issue of the parties, John born February 7, 1989, and Christopher, born December 9, 1993, ages ten and five respectively.
The question presented on this motion is whether there is a duty of loyalty and confidentiality owed to a former prospective client by the lawyer interviewed. The answer to that question depends on whether confidential information was imparted by the prospective client to the lawyer interviewed and whether the revelation of information imparted to the lawyer interviewed would be harmful to the prospective client in subsequent proceedings. In this situation, it is the plaintiff's burden to prove that such significant information was disclosed at the conference held with the interviewing lawyer and that such information would be of significant harm to the plaintiff if disclosed in subsequent proceedings.
The Rules of Professional Conduct with which the court is concerned in this case are Rules 1.6(a); 1.7(a), 1.9(1) and Rule 1.10(a). There is no question that if the court were to find that Arnold Rutkin (the lawyer interviewed in this case) is disqualified from representing the defendant in these proceedings so also is his partner Sarah Oldham disqualified from representing the defendant. (It is she who represents the defendant in these proceedings.) The defendant has so stipulated orally upon the record.
There are no cases in Connecticut involving disqualification by reason of an initial interview with a former prospective client nor do our Rules of Professional Conduct cover the situation of the duty of confidentiality and loyalty to a former prospective client. It is for this reason that the court has looked to the Proposed Draft Rule of the American Law Institute and has looked to cases in other jurisdictions. CT Page 13455
In December, 1995, the plaintiff consulted his New York attorney, Larry Pollack, and discussed his family situation with him. Mr. Pollack recommended lawyers for the plaintiff to see in Connecticut. The plaintiff knew Henry Pascarella as a member of the Board of Directors of Nine West Corporation and had him assist in recommending and interviewing counsel. The plaintiff interviewed several attorneys, most of whom were interviewed in his Stamford office. One of those interviewed was Attorney Arnold Rutkin of Westport. This interview lasted between one and a half or two hours, depending upon whose testimony one were to believe. Present at the interview was Mr. Pascarella and two employees of Nine West Corporation who have not been identified in this proceeding. Mr. Pascarella described all the meetings with the attorneys interviewed as having discussed the same topics: the conduct of the defendant, the fact that the plaintiff wanted to preserve the marriage, the prenuptial agreement, the plaintiff's deep concern for his relationship with his children and custody of the children.
Mr. Pascarella did not differentiate any of the attorney interviews nor did he specify any particular topics discussed with Attorney Rutkin. He did state that the purpose of the plaintiff's interviews was to evaluate, the lawyers "to determine who was going to be championing his cause for him and who was sympatico with his views." This is consistent with Attorney Rutkin's testimony that the plaintiff conducted the interview.
The testimony of the plaintiff and Attorney Rutkin differs widely on many significant points. The court believes the plaintiff's testimony is recalled by his recollection of what occurred generally at these interviews with the others and not by particular recollection of Attorney Rutkin's interview.
The court finds that Attorney Rutkin took no notes, that he was furnished no financial information except the general statement the plaintiff made to all the attorneys of his overall wealth, that he was not advised of a prenuptial agreement, nor given the defendant's name nor the names or birth dates of the children, and that the information imparted was generic, that is not of a confidential nature with respect to the particular issues between the parties.
The proposed draft rule of The American Law Institute is New Rule 1.18 which sets forth the duties owed to a prospective client.[1] That rule provides that when no client-lawyer CT Page 13456 relationship ensues, a lawyer who has consulted with a prospective client shall not use or reveal information learned in the consultation except as Rule 1.6 and Rule 1.9 would permit. The rule goes on to provide that such lawyer shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly beneficial to that person in the matter. (See defendant's exhibit 4.) The rule, then, has a two pronged test: (1) Was there confidential information imparted by the prospective client to the lawyer; and if so, (2) would the revelation of such information be significantly harmful to the former prospective client?
In this situation, the court is faced with the problem of reconciling the right of a person to counsel of his or her choice on the one hand, and the obligation of maintaining the highest standards of professional conduct and the scrupulous administration of justice on the other. Hull v. Celanese Corp.,513 F.2d 568, 569 (2d Cir. 1975). So also the right of a litigant to counsel of his or her own choosing is not absolute and cannot always predominate. McCourt Co. v. FPC Properties,Inc., 386 Mass. 145, 154; 434 N.E.2d 1234 (1982).
In the case of Mailer v. Mailer, 455 N.E.2d 1211 (1983), the Massachusetts Supreme Judicial Court held that an attorney where there was no attorney-client relationship and no showing that confidential information detrimental to the prospective client had been imparted, was not disqualified from representing the other party. The court there found that a period of five years had passed from the time of interview to the time of trial. In the immediate case, a period in excess of three and one half years has passed. The Massachusetts court noted that a lapse of time is a factor that may be weighed in such a situation, but certainly not a controlling factor.
Yet another factor is the lack of a charge for the conference by the lawyer. There was no statement for services or any payment in this case. Again, however, it is only a factor to weigh.
Yet another analysis of the relationship between Attorney Rutkin and Mr. Camuto may be made by the conduct of the interview itself. Attorney Rutkin testified that Mr. Camuto conducted the interview. As has been stated, Mr. Camuto interviewed several CT Page 13457 attorneys. It was his intention to determine the right lawyer to represent him in this dissolution. It is clear to the court that it was not his intention to establish an attorney-client relationship. The situation was not unlike that of B. F. Goodrich in interviewing Attorney Durkee in the Goodrich case.B. F. Goodrich v. Formasa Plastics Corporation, 638 F. Sup. 1050
(U.S.D.C. S.D. Texas 1986). There the court found that Goodrich
conducted five interviews and had no intention of entering into an attorney-client relationship in its first interview with any of the attorneys. The court there held Goodrich could disqualify defendant's attorney only if it could show that that person actually received confidential information which could be used against Goodrich. If confidences were not imparted in the interview between Attorney Rutkin and the plaintiff, the plaintiff cannot prevail in his motion to disqualify. SeeDerrickson v. Derrickson, 541 A.2d 149 (D.C.App. 1988); State exrel. DeFrances, 446 S.E.2d 906 (W.Va. 1994).
The court finds that there was nothing imparted to Attorney Rutkin of a confidential nature beyond that which might be described as of a general nature. The court finds, further, that any such information, even if imparted, could be of no significant harm to the plaintiff in subsequent proceedings with the defendant.
The court further finds that the plaintiff has failed to prove that significant information was disclosed at his conference in 1996 with Attorney Rutkin and finds further that that information which was imparted to Attorney Rutkin would not be significantly harmful to the plaintiff in any subsequent proceedings between the parties. The motion to disqualify counsel for the defendant is denied.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE