Connolly, J.
On April 16, 2003, this matter came before the court for hearing on the plaintiff, Booth Creek Ski Holdings, Inc.’s (“Booth Creek”) motion to disqualify the defendants’ counsel, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP. Both parties were heard and filed extensive briefs. For the reasons set forth below, the plaintiffs motion is DENIED. The court orders that Wilson, Elser, Moskowitz, Edelman & Dicker, LLP’s continued representation of the defendants in the above-captioned matter is conditioned on their withdrawal as the defendant’s counsel for Big Bear Mountain Resort in the case currently pending in San Bemadino, California.
FACTS
The facts are relatively simple. The law firm representing the defendants in this case is Wilson, Elser, *210 Moskowitz, Edelman & Dicker LLP (“WEMED”). WEMED is a national law firm with extensive experience in insurance coverage issues and litigation arising therefrom. This present case arises out of a claim by Booth Creek under two insurance policies written by the defendants, ASU International LLC, Essex Insurance Company, and Certain Underwriters, Lloyd’s, London (“Lloyd’s”). These policies provided Booth Creek with Weather/Income Stabilization Coverage. On November 13, 2001, Booth Creek commenced this civil action claiming damages over one million dollars for the defendants’ alleged failure to pay claims under the two insurance policies issued by the defendants. Attorney George Rockas (“Attorney Rockas”) of WEMED filed his appearance and answer on behalf of the defendants on December 4, 2001.
Booth Creek owns and operates ski resorts on the East and West Coast. One of the resorts owned by Booth Creek is Big Bear Mountain located in California. In 2002, two personal injuiy cases (hereinafter referred to as the Hitff and Burling cases)[2] were filed against Big Bear Mountain Resort, a subsidiary of Booth Creek. In July 2002, the Huff case was assigned to WEMED’s Los Angeles, California office. In September 2002, WEMED’s Los Angeles office was also assigned the Burling case. While the Burling case was settled for $12,000 and dismissed on April 28, 2003, the Huff case remains pending. It is interesting to note that the Huff and Burling personal injuiy cases are the only two personal injury defense cases that have ever been sent to WEMED’s Los Angeles office by any entity affiliated with Booth Creek.[3]
The discoveiy that WEMED’s Boston office was representing the defendants in this insurance case against Booth Creek and that WEMED’s Los Angeles office was simultaneously representing Booth Creek' as a defendant in the two California personal injuiy cases, did not occur until March 18, 2003. Evidently, WEMED, in running its “conflict check,” only put the name Big Bear Mountain Resort into its conflicts system. Because of that mistake, the conflict system failed to appraise WEMED’s Los Angeles office that WEMED’s Boston office was already involved in this litigation in which it opposed Booth Creek. There is no question in this case that the problem arose from simple inadvertence or mistake. Upon notification of the pendency of the two California cases and this insurance case, WEMED took steps to construct an “ethical screen” so that no information would be shared between the attorneys working in WEMED’s Los Angeles and Boston offices.
DISCUSSION
In this case Booth Creek is attempting to disqualify WEMED as counsel for the defendants. In its motion to disqualify the defendants’ counsel, Booth Creek acknowledges that it has no reason to believe that WEMED would abuse its ethical obligation to maintain the confidences disclosed to it by Booth Creek in the California cases. See Plaintiffs Motion to Disqualify at p. 7. Booth Creek argues, however, that the rule announced in The McCourt Company, Inc. v. FPC Properties, Inc., 386 Mass. 145 (1982), is absolute. In McCourt, the Supreme Judicial Court held that “[a] law firm that represents client A in the defense of an action may not, at the same time, be counsel for a plaintiff in an action brought against client A, at least without the consent of both clients.” Id. The defendant claims that this case presents an exception to the rule announced in McCourt because this conflict was the result of unintentional conduct, involves two unrelated matters, and the plaintiff has not pointed to any confidences that were or could be used to prejudice the plaintiffs case. With the exception of a conflict that arises from simple inadvertence or mistake, each of these grounds was expressly rejected in McCourt. See id. at 146 (stating, “[i]t is also irrelevant that the lawsuits are unrelated in subject matter and that it appears probable that client A will not in fact be prejudiced by the concurrent participation of the law firm in both actions”). Since the defendants have not pointed to any statute, case or facts, that have been held to qualify as an exception to the McCourt rule, this court will not depart from the rule announced in McCourt.[4]
Although this court finds that the McCourt rule is applicable in this case, the court concludes that McCourt does not require disqualification of WEMED from this case. Disqualification of WEMED from this case is not the result contemplated by McCourt and Mass.R.Prof.C. 1.7 (“Rule 1.7”)[5] and would be inequitable. McCourt expressly forbids “one attorney from defending a client in one action and then subsequently representing a new client against the former client, unless each client, after full disclosure, consents.” Wellman v. Willis, 400 Mass. 494, 501 (1987) (emphasis added). As demonstrated by the use of the word “subsequently,” McCourt intends to prevent a lawyer from taking a new case in which he is then asked to oppose a party to whom he had a preexisting attorney-client relationship. This rule is also intended to preserve the lawyer's duty of “undivided loyalty” to a client with whom he had a preexisting relationship. McCourt, 386 Mass. at 146; see Mass.R.Prof.C. 1.7 Comment [1] (stating, “loyalty is an essential element in the lawyer’s relationship to a client”). When Booth approached WEMED to represent it in the two California personal injuiy cases, WEMED had a preexisting attorney-client relationship with the defendants in this case, i.e., the insurers. McCourt placed an ethical obligation on WEMED to deny Booth’s request to represent it in those matters. Had WEMED complied with McCourt and Rule 1.7, it would have denied Booth’s request and continued acting as the defendants’ lawyer in the present case. To disqualify WEMED from this case, therefore, would act contraiy to the result intended by McCourt and Rule 1.7.
*211 This court’s decision not to disqualify WEMED from this case is consistent with the result in the McCourt case. In McCourt, Parker, Coulter, Daley & White (PCDW) had a preexisting attorney-client relationship with the parent company of the defendant when McCourt approached PCDW to serve as counsel in McCourt’s suit against the defendant. McCourt, 386 Mass. at 147. The Court disqualified PCDW from his representation of McCourt, but did not disqualify PCDW from his representation of the defendant’s parent company. Id. at 152. The Court followed the intention of McCourt in preventing a lawyer from “subsequently representing a new client against the former client,’’ see Wellman, 400 Mass. at 501 (emphasis added), by disqualifying him from the new suit and not disturbing the preexisting relationship PCDW had with the defendant’s parent company. Following the Court’s approach in McCourt, WEMED must be disqualified from the personal injury cases it took subsequent to its decision to represent the defendants in this insurance case with Booth Creek. This court, therefore, orders that WEMED’s continued representation of the defendants is conditioned on WEMED’s withdrawal from its representation of Booth Creek in the pending personal injury case in California.[6]
The court’s decision to allow WEMED to continue as counsel for the defendants, if it withdraws from its representation of Booth in Booth’s California case, would not “taint[] the legal system or the trial of the cause before [the court).” Wellman, 400 Mass. at 502, quoting Borman v. Borman, 378 Mass. 775, 788 (1979). First, Booth Creek has not presented any confidential information given to WEMED that has been used, will be used or could be used to prejudice it. Booth Creek even acknowledges that it has no reason to believe that WEMED would abuse its ethical obligation to maintain the confidences disclosed to it by Booth Creek in the California cases. See Plaintiffs Motion to Disqualify at p. 7. Additionally, the California cases were the first cases Booth Creek had ever assigned to WEMED. If WEMED had an attorney-client relationship with Booth Creek in addition to the two California cases, there would be the added concern of the disclosure of confidential information obtained during the course of that relationship. Since Booth Creek and WEMED did not have an attorney-client relationship beyond the California cases, there is no possibility that the defendants in this case could use confidential information disclosed to WEMED during the course of that preexisting relationship.
Second, the cases giving rise to the conflict are completely unrelated. The cases in California are personal injury cases relating to one injury a plaintiff obtained while skiing and another injury involving a man struck by a chair lift at Big Bear Mountain in California. The case before this court deals with a Weather/Income Stabilization Insurance Policy that Booth Creek had with the defendants for two of its ski resorts on the East Coast. Third, after learning of the conflict, WEMED constructed an “ethical screen” so that no information would be shared between the attorneys working in WEMED’s Los Angeles and Boston offices. While the court does not have the details of the “ethical screen,” it recognizes that the two matters are occurring on opposite ends of the country. The fact that the matters are occurring in different offices at opposite ends of the country reduces the possibility of inadvertent disclosure of potentially confidential information. See NFC, Inc. v. General Nutrition, Inc., 562 F.Sup. 332, 334 (D.Mass. 1983) (holding that where there are more complex factors, one of which is multiple law firm offices, it is not fair to impose an absolute rule requiring disqualification). Based on these facts, the court concludes that WEMED’s continued representation of the defendants, if it withdraws from Booth’s California litigation, would not create “an appearance of impropriety” and would not “serve to undermine the public’s confidence in the integrity of the legal profession.” Bays v. Theran, 418 Mass. 685, 693 (1994).
ORDER
For all of the above reasons, the plaintiffs motion is DENIED. The court ORDERS that Wilson, Elser, Moskowitz, Edelman & Dicker, LLP’s continued representation of the defendants in this case is conditioned on their withdrawal as Booth Creek’s counsel in Huff v. Big Bear Mountain Resort, Civil Action #BBC HS00536. Said law firm shall file an affidavit in this case that it has complied with the above withdrawal in the Huff case. In the event said law firm does not withdraw from representation of the Big Bear Mountain Resort in the Huff case, the moving party is instructed to move for a modification of this order.

Huff v. Big Bear Mountain Resort, Civil Action #BBC HS00536, and Burling v. Big Bear Mountain Resort; Booth Creek Ski Holdings, Inc., Civil Action #BBC HS00581.

Likewise, noted is that Booth Creek has not discharged WEMED as its attorney in California in the one remaining relatively minor personal injury case, namely the Huff case. Evidently, Booth Creek is quite satisfied with WEMED’s representation in the Huff case. Interestingly, but not surprisingly, Booth Creek has put all its efforts into striking WEMED from representing the insurers in this over $1,000,000 insurance coverage case (which case was commenced approximately one year before the insurance cases were commenced).

In McCourt the Court stated, “[i]f there are any special circumstances in which an exception to this general rule should be recognized, no such circumstances have been demonstrated here, and we are aware of no case in which such an exception has been recognized and applied.” McCourt, 386 Mass. at 146. This statement leaves open the possibility that there are special circumstances in which the Court may recognize an exception to the general mle.

The Massachusetts Rules of Professional Conduct became effective on January 1, 1998. Rule 1.7 corresponds to former Massachusetts Rule DR 5-105(A) and (C), on which McCourt and Wellman v. Willis, 400 Mass. 494, 501 (1987), are based. This court concludes that while some of the *212 language In DR 5-105 and Rule 1.7 is different, their purpose is the same. For that reason, this court will treat McCourt as applicable to Rule 1.7.

Ihis court notes that the facts in McCourt are distinguishable from the facts in this case. Here, WEMED did not subsequently represent a new client against Booth’s interest. WEMED subsequently represented Booth as a defendant in Booth’s personal injury actions. Despite this difference, given the purpose of the rule, the result should be the same. In fact, in light of the facts of this particular case, the result is more appropriate than in McCourt because disqualifying WEMED from this case would be manifestly unjust. The defendants made their choice of counsel prior to the existence of any conflict. “[A] court should not lightly interrupt the relationship between a lawyer and her client.” Adoption of Erica, 426 Mass. 55, 58 (1997). While a defendant’s right to choose counsel is not absolute, see McCourt, 386 Mass. at 151, the court cannot ignore the fact, that the current conflict was in part created by the party now moving to disqualify the attorney. But for the Plaintiffs and WEMED’s mistake, WEMED would have continued on as counsel for the defendant. A mistake, in part made by the party now moving to disqualify the attorney, should not negate the defendants’ choice of counsel.